EILEEN T. GALLAGHER, J.:
{¶ 1} Appellant-mother appeals from the juvenile court's decision awarding permanent *1267 custody of her three children to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). She raises the following assignment of error for our review:
The trial court's decision to deny legal custody of J.F., G.M., and C.M. to their maternal grandmother and terminate appellant's parental rights is not supported by the record, the applicable legal standard, or the weight of the evidence presented.
{¶ 2} After careful review of the record and relevant case law, we affirm the trial court's judgment.
I. Procedural and Factual History
{¶ 3} On December 26, 2014, CCDCFS filed a complaint for temporary custody of J.F. (d.o.b. Sept. 22, 2010), alleging that he was a dependant child. J.F. had been in the legal custody of his paternal grandmother while his parents were undergoing inpatient drug treatment. However, J.F. was removed from his paternal grandmother's care after she overdosed and was hospitalized. The agency filed a motion for predispositional temporary custody, and a magistrate committed J.F. to the emergency custody of CCDCFS that day. On March 26, 2015, J.F. was adjudicated dependent and was committed to the temporary custody of CCDCFS on April 3, 2015. On November 20, 2015, CCDCFS filed a motion to modify temporary custody of J.F. to permanent custody. In the motion for permanent custody, CCDCFS social worker, Charlene Hill, averred that Mother, Father, and paternal grandmother each failed to comply with certain aspects of their respective case plans that were filed and approved by the court.
{¶ 4} While the motion for permanent custody of J.F. was pending, CCDCFS filed a complaint for temporary custody of G.M. (d.o.b. Mar. 27, 2013), alleging him to be neglected. On March 28, 2016, G.M. was committed to the emergency custody of CCDCFS. However, on May 13, 2016, the agency withdrew the complaint for temporary custody in favor of a complaint for permanent custody pursuant to R.C. 2151.353(A)(4). The complaint alleged that Mother and Father have substance abuse problems that prevent them from providing adequate care. The complaint further alleged that Mother is cognitively delayed and has a criminal history, including convictions for theft and drug possession. At the time the complaint for permanent custody was filed, Mother was incarcerated.
{¶ 5} On April 8, 2016, Mother gave birth to C.M. On April 25, 2016, CCDCFS filed a complaint for dependency and permanent custody of C.M. pursuant to R.C. 2151.353(A)(4). The complaint alleged that Mother used cocaine, marijuana, and opiates during her pregnancy and tested positive for opiates at the time of C.M.'s birth. C.M. suffered from withdrawal symptoms due to his exposure to drugs in utero and required further hospitalization. When C.M. was released from the hospital, he was placed in the emergency custody of CCDCFS.
{¶ 6} On April 29, 2016, the children's maternal grandmother filed a motion to intervene in J.F.'s case, which the trial court denied. On June 15, 2016, Mother filed motion for legal custody to maternal grandmother.
{¶ 7} Following an adjudicatory hearing held on June 29, 2016, the juvenile court issued separate journal entries finding G.M. and C.M. to be dependent children.
{¶ 8} On January 25, 2017, the juvenile court held a combined hearing on Mother's motion for legal custody to maternal grandmother, and CCDCFS's motion for permanent custody of J.F. and dispositional prayer of permanent custody on the complaints for G.M. and C.M. At the onset *1268 of the hearing, Father and paternal grandmother stipulated to the agency's motion for permanent custody. During the hearing, the trial court heard testimony from the children's foster parents, CCDCFS social worker, Charlene Hill, maternal grandmother, and the children's guardian ad litem ("GAL").
{¶ 9} J.F.'s foster parent, K.S., testified that J.F. has lived in her home since January 2015, except for a brief period of time when he attempted to live with his brothers and their foster family. When J.F. did not "attach" with his new foster family and expressed his desire to leave, K.S. accepted him back into her home. K.S. testified that J.F. has educational deficits and behavioral issues that have improved with therapy and a highly structured routine. K.S. testified that she intended to adopt J.F. if permanent custody was granted.
{¶ 10} K.S. testified that she has personally observed J.F.'s interactions with Mother. She noted that Mother "loves [J.F.] dearly," but that the visits "upset [J.F.] for days." K.S. explained that J.F. gets upset because "he thinks he is going back to his mom because she projects it to him, and he becomes nasty, really nasty." With respect to maternal grandmother, K.S. testified that maternal grandmother "is very interested in him and loves him, he loves her." However, K.S. opined that they do not have a proper bond based on a lack of discipline.
{¶ 11} L.N. is the foster parent of G.M. and C.M. L.N. was questioned at length about the children's special needs. L.N. testified that when G.M. came to live with her, he "displayed low self-control" and "had methods for getting his way that were pretty manipulative." L.N. stated that she has implemented a behavioral plan that has improved G.M.'s behavior. L.N. testified that G.M. has severe speech apraxia and is on an individualized education plan for a severe speech and language disorder. He requires weekly speech therapy at the Cleveland Hearing and Speech Center and attends a special needs preschool.
{¶ 12} L.N. began fostering C.M. directly from the hospital after he was born. She testified that C.M. was hospitalized for nearly a month after his birth due to his drug exposure while in utero. L.N. stated that C.M. has a heart murmur, acid reflux, reactive airway disease, and torticollis. In addition, C.M. has delayed motor skills and speech development. Due to these issues, C.M. regularly sees a developmental specialist and a physical therapist. L.N. estimated that she spends approximately four to eight hours a week taking the children to their various appointments. L.N. testified that she hopes to adopt G.M. and C.M. and would have taken all three of the children if placement had worked with J.F.
{¶ 13} L.N. acknowledged that Mother loves her children. However, L.N. testified that Mother does not always show up for her visits with the children, and when she does, the boys "revert back to some bad behaviors." She stated that after the visits, the children are emotionally upset and exhausted because they want to know why they cannot go home with Mother. Regarding maternal grandmother, L.N. testified that maternal grandmother clearly loves the children and interacts with them well during visits.
{¶ 14} CCDCFS social worker, Charlene Hill, was assigned to the children's case in January 2015. Hill summarized the agency's procedural involvement with the children. Hill testified that J.F. came into the agency's custody after his legal custodian, paternal grandmother, was hospitalized following an overdose.
*1269 {¶ 15} G.M. came into the custody of the agency in March 2016. Hill explained that G.M. had been under the care of maternal grandmother, but that CCDCFS later sought custody of G.M. once the agency learned that maternal grandmother was permitting G.M. to be in the unsupervised care of Mother and Father while maternal grandmother was at work.
{¶ 16} C.M. came into the agency's custody immediately following his birth. "Mother used cocaine, marijuana, and opiates during her pregnancy, testing positive in March 2016 and April 2017." She also tested positive for opiates at the time of C.M.'s birth, causing him to be "born drug exposed." Based on the circumstances of C.M.'s birth and Mother's failure to progress with her case plan, the agency sought permanent custody of G.M. and C.M. without the chance for reunification.
{¶ 17} Hill explained that the agency was seeking permanent custody of the children because of Mother's history of substance abuse, mental health issues, poor communication skills, inadequate parenting skills, and late appearances for family visitation. The agency developed a case plan for Mother, which Hill described as "unsuccessful." Hill stated that Mother failed to follow through with services, was inconsistent with the services, was inconsistent with visitation, and failed to cooperate with the agency.
{¶ 18} Regarding her substance abuse assessment, Hill testified that Mother completed a substance abuse assessment through the common pleas court following her 2014 conviction for drug possession. However, Mother failed to complete a second substance abuse assessment after she tested positive for drugs at the time of C.M.'s birth and violated her probation. Hill further testified that Mother is currently in jail on drug-related charges.
{¶ 19} In addition, Hill testified that Mother failed to comply with the mental health and parenting objectives of her case plan. Hill explained that Mother did not comply at all with her mental health services and that her in-home parenting service provider ended its services because "it was unable to work with [Mother]."
{¶ 20} With respect to visitation, Hill testified that Mother's attendance for her weekly visits with the children was "inconsistent." As a result, the agency reduced her scheduled visits from weekly to once a month. Hill testified that the visits "tend to be very chaotic." The children are "all over the place" and Mother frequently creates turmoil by "saying things that should not be said to the child[ren]." Finally, Hill testified that Mother does not have housing, is not employed, and is currently in jail.
{¶ 21} Based on Mother's failure to comply with her case plan objectives, Hill testified that she does not believe Mother has the ability to meet her children's needs and that permanent custody is in the children's best interests. Hill testified that
Due to the non-compliance of services, and the continued substance abuse, and in the continued concerns with mental health, I feel it's in the best interests for the children remain in the foster homes.
{¶ 22} She explained:
I feel that all of [the children's] basic needs and special needs are being met in the foster homes, that they are well cared for. They have made tremendous progress in the time that they've been in those homes. Their speech has improved, Their behavior has improved. Their mental health is being addressed, especially with [J.F.], which it is very difficult for him with mental health, and [K.S.] has gone above and beyond to make sure, those foster parents have, to *1270 make sure that their special needs are being met and they're cared for.
{¶ 23} Regarding maternal grandmother, Hill testified that the agency looked into her as an appropriate placement but was unable to approve her for placement based on her history with the agency. Hill stated that the agency conducted a home visit and found the home to be appropriate. However, the agency determined that maternal grandmother was not appropriate for placement because she "has an extensive history with the agency mostly for educational neglect." Hill opined that it would not be in the children's best interests to place them in the legal custody of maternal grandmother "because she has not shown in the past that she has been able to provide the special needs that they need to be taken care of with the speech therapy, the medical, the Help Me Grow, all of those things."
{¶ 24} Maternal grandmother testified that she is employed and lives in a three-bedroom home with her two teenage daughters. She stated that she has a "fantastic" relationship with the children and loves each of them. Maternal grandmother testified that she is willing and able to take care of the children and was committed to addressing their special needs by enrolling them into the necessary programs and schools. Maternal grandmother further testified that she would protect the children from their parents and would not allow Mother or Father to be around the children if they were under the influence of drugs.
{¶ 25} On November 23, 2016, maternal grandmother signed a statement of understanding for legal custody, expressing her intent to become the legal custodian of the children. Maternal grandmother maintained that the agency failed to get back to her about her application for legal custody despite her repeated requests for information from social worker Hill. Maternal grandmother testified that when G.M. was under her care, there was no agreement with the agency that she would keep the child away from Mother.
{¶ 26} The trial court also considered the recommendations of the GAL. On November 16, 2016, the GAL submitted a report in which he recommended that the trial court grant CCDCFS's request for permanent custody. The GAL report references Mother and Father's history of drug addiction, Mother's "numerous convictions for drug abuse," and the lack of a proper home to raise the children. Accordingly, the GAL opined that the "parents have still been unable to demonstrate an ability to work the case plan and an ability to care for the three children."
{¶ 27} At the hearing, the GAL reiterated his recommendation that permanent custody was in the children's best interests. The GAL stated that he had the opportunity to observe maternal grandmother's visits with the children. He stated that maternal grandmother appeared to have a bond with the children. However, he characterized the visits as "weird" and stated that the children acted "wild" while they were with maternal grandmother. When asked why he was recommending permanent custody as opposed to legal custody to maternal grandmother, the GAL responded:
Based on history. I know in talking to paternal grandmother, she felt that things were out of control over at maternal grandmother's house, and I tried to take that with a grain of salt, but I know the history of the matter, the fact that she allowed the children to continue-or allowed the parents to continue to see the children.
The kids are doing very well right now. They're making improvements on their learning deficiencies. But in no way-I
*1271 mean, maternal grandmother, I mean, there is no question that she loves the children and the children love her. I can't say that's not the case. It is.
Despite maternal grandmother's love for the children, however, the GAL stated that he did not believe legal custody to maternal grandmother was in the children's best interests.
{¶ 28} On February 3, 2017, the trial court issued separate journal entries terminating Mother's parental rights and ordering J.F., G.M., and C.M. to be placed in the permanent custody of CCDCFS. In addition, the trial court denied Mother's motion for legal custody to maternal grandmother. In the journal entry for J.F., the court noted that J.F. has been in the temporary custody of CCDCFS for 12 or more months of a consecutive 22-month period. In each journal entry, the court determined by clear and convincing evidence that "a grant of permanent custody is in the best interests of the child[ren] and the child[ren] cannot be placed with one of the child[ren]'s parents within a reasonable time or should not be placed with either parent."
{¶ 29} Mother now appeals from the trial court's judgment.
II. Law and Analysis
{¶ 30} In her sole assignment of error, Mother challenges the trial court's decision to award permanent custody to the agency. In addition, Mother contends that the trial court erred by denying her motion for legal custody to maternal grandmother.
{¶ 31} We take our responsibility in reviewing cases involving the termination of parental rights and the award of permanent custody very seriously. A parent has a " 'fundamental liberty interest' in the care, custody and management" of his or her child, In re Murray , 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990), quoting Santosky v. Kramer , 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and the right to raise one's own child is " 'an essential and basic civil right,' " In re N.B. , 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, 2015 WL 406036, ¶ 67, quoting In re Hayes , 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). However, this right is not absolute. It is " 'always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.' " In re L.D. , 2017-Ohio-1037, 86 N.E.3d 1012, ¶ 29, quoting In re Cunningham , 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).
{¶ 32} Because termination of parental rights is " 'the family law equivalent of the death penalty in a criminal case,' " it is "an alternative [of] last resort." In re J.B. , 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, 2013 WL 1799849, ¶ 66, quoting In re Hoffman , 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14 ; In re Gill , 8th Dist. Cuyahoga No. 79640, 2002-Ohio-3242, 2002 WL 1397156, ¶ 21. It is, however, "sanctioned when necessary for the welfare of a child." In re M.S. , 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, 2015 WL 1276469, ¶ 7, citing In re Wise , 96 Ohio App.3d 619, 624, 645 N.E.2d 812 (9th Dist.1994). All children have " 'the right, if possible, to parenting from either natural or adoptive parents which provides support, care, discipline, protection and motivation.' " In re J.B. at ¶ 66, quoting In re Hitchcock , 120 Ohio App.3d 88, 102, 696 N.E.2d 1090 (8th Dist.1996). Where parental rights are terminated, the goal is to create "a more stable life" for dependent children and to "facilitate adoption to foster permanency for children." In re N.B. at ¶ 67, citing In re Howard , 5th Dist. Tuscarawas No. 85 A10-077, 1986 WL 8644, at *2 (Aug. 1, 1986).
*1272 A. Motion for Legal Custody to Maternal Grandmother
{¶ 33} Before addressing the juvenile court's permanent custody determination, we find it necessary to address several preliminary arguments relating to the court's denial of the motion for legal custody to the children's maternal grandmother.
{¶ 34} Initially, Mother contends that the trial court failed to sufficiently consider Ohio Administrative Code, Section 5101 and its preference for placing children with grandparents in the event the children cannot remain in their home. Ohio Adm.Code 5101:2-42-05(E) and (F).
{¶ 35} Pursuant to the plain language of the Ohio Administrative Code, a children services agency is required to select a substitute care setting that is consistent with the best interests and special needs of the child. Ohio Adm.Code 5101:2-42-05(E). Under the rules, the substitute-care setting must be "the least restrictive, most family-like setting available to meet the child's emotional and physical needs," and must "provide a safe environment for the child." Ohio Adm.Code 5101:2-42-05(E)(1) and (5). In considering whether a relative can be approved as a minor child's caregiver, a children services agency is guided by the procedures set forth in Ohio Adm.Code 5101:2-42-18(B). Although the rules define the home of a suitable relative as the least restrictive setting for a substitute-care setting while an agency has temporary custody, a foster home is on the list of least restrictive placements if there is no suitable relative or nonrelative with whom to place the child. Ohio Adm.Code 5101:2-42-05(F).
{¶ 36} The relevant sections of the Ohio Administrative Code relied on by Mother relate to the procedural requirements a public children services agency must adhere to before approving the placement of a child with a substitute caregiver while the agency has temporary custody. Thus, Mother's argument addresses the obligations of the agency and its substitute-care placement determination rather than the trial court's permanent-custody determination.
{¶ 37} There is nothing in the Ohio Administrative Code to suggest that the trial court was required to consider the agency's procedural obligations when rendering its decision in this case. We nevertheless find nothing in the record to support Mother's position that the agency failed to consider maternal grandmother's "suitability" for placement under Ohio Adm.Code 5101:2-42-05, or otherwise failed to "[a]ssess [her] ability and willingness to provide care and supervision of the child and to provide a safe and appropriate placement for the child." Ohio Adm.Code 5101:2-42-18(B)(8).
{¶ 38} During the permanent custody hearing, Hill testified that after J.F. was removed from his paternal grandmother's custody and placed in the temporary custody of the agency, CCDCFS permitted G.M. to reside with maternal grandmother with the understanding that maternal grandmother would not leave G.M. unsupervised with his parents and would meet all of his needs. Despite this agreement, Hill testified that maternal grandmother admitted that she was allowing G.M. to be alone with Mother and Father while she was at work. Hill testified that she was also "receiving reports that there may possibly have been some physical and * * * mental abuse while [G.M.] was there." Based on this information, the agency determined that maternal grandmother did not have the ability to provide a safe and appropriate placement for G.M. See Ohio Adm.Code 5101:2-42-18(B)(8).
{¶ 39} Hill further testified that the agency considered maternal grandmother *1273 as an appropriate placement, but did not approve her "due to her history with the agency." Hill explained that maternal grandmother has not shown in the past that she can provide for the children's special needs.
{¶ 40} Under these circumstances, we find the record demonstrates that the agency complied with Ohio Adm.Code 5101:2-42-05(E)(1) by selecting a substitute care setting that "[i]s considered the least restrictive, most family-like setting available to meet the child[ren]'s emotional and physical needs." See In re A.J. , 148 Ohio St.3d 218, 2016-Ohio-8196, 69 N.E.3d 733. The record reflects that at some point, the agency considered maternal grandmother a "suitable relative," but properly exercised its discretion to modify its assessment upon the discovery of new information.
{¶ 41} We recognize Mother's position that the trial court's decision "utterly lacks any determination with regard to maternal grandmother's 'suitability' under Ohio Adm.Code 5101:2:42:05(E) and (F)." However, we emphasize that the relevant Ohio Administrative Code sections relied on by Mother relate to the procedures the agency must follow when placing a child with substitute caregivers. They do not place burdens or requirements on a juvenile court in permanent custody proceedings, nor do they necessitate findings in the court's decision to terminate parental rights and grant permanent custody to the agency. While R.C. 2151.412(H)(2) provides that the trial court shall prioritize placing children in the legal custody of "a suitable member of the child's extended family" when developing case plans, there is no such requirement in custody determinations. See In re A.D. , 8th Dist. Cuyahoga No. 85648, 2005-Ohio-5441, 2005 WL 2600638, ¶ 12 ("While a trial court must find by clear and convincing evidence that the parents are not suitable placement options, the court is not required to invoke the same standard with regard to a grandparent.") Accordingly, the juvenile court had no obligation to determine maternal grandmother's suitability in its permanent custody decision.
{¶ 42} Mother further contends that the trial court's judgment denying the motion for legal custody to maternal grandmother was not supported by clear and convincing evidence. However, " '[a] parent has no standing to assert that the court abused its discretion by failing to give the [grandparent] legal custody; rather, the challenge is limited to whether the court's decision to terminate parental rights was proper.' " In re L.W. , 8th Dist. Cuyahoga No. 104881, 2017-Ohio-657, 2017 WL 712808, ¶ 23, quoting In re S.G. , 3d Dist. Defiance No. 4-16-13, 2016-Ohio-8403, 2016 WL 7626204, ¶ 52, citing In re Pittman , 9th Dist. Summit No. 20894, 2002-Ohio-2208, 2002 WL 987852, ¶ 70. As this court has stated, if permanent custody to the agency is in the children's best interests, legal custody to a relative necessarily is not. In re V.C. , 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, 2015 WL 7777606, ¶ 60, citing In re M.S. , 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, 2015 WL 1276469, ¶ 11. Thus, Mother's challenge to the trial court's judgment granting CCDCFS permanent custody is limited to whether the trial court improperly terminated her parental rights.
{¶ 43} With these principles in mind, we now review the trial court's judgment awarding CCDCFS permanent custody and terminating Mother's parental rights.
B. Standard for Terminating Parental Rights and Awarding Permanent Custody to CCDCFS
{¶ 44} An agency may obtain permanent custody of a child in two ways.
*1274 In re E.P. , 12th Dist. Fayette Nos. CA2009-11-022 and CA2009-11-023, 2010-Ohio-2761, 2010 WL 2415606, ¶ 22. An agency may first obtain temporary custody of the child and then file a motion for permanent custody under R.C. 2151.413, which it did for J.F. Or, an agency may request permanent custody as part of its original abuse, neglect, or dependency complaint under R.C. 2151.353(A)(4), which it did for G.M. and C.M.
{¶ 45} In this case, CCDCFS filed a motion for permanent custody of J.F. pursuant to R.C. 2151.413. When an agency files a permanent custody motion under R.C. 2151.413 after obtaining temporary custody, the guidelines and procedure set forth under R.C. 2151.414 apply. Division (B) of R.C. 2151.414 sets forth a two-prong analysis to be applied by a juvenile court.[1] Pursuant to this division, before a trial court can terminate parental rights and grant permanent custody to a county agency, the court must find by clear and convincing evidence (1) the existence of any one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (e), and (2) that granting permanent custody to the agency is in the best interest of the child.
{¶ 46} Clear and convincing evidence is defined as
that measure or degree of proof which is more than a mere "preponderance of the evidence" but not to the extent of such certainty required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.
In re Awkal , 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist.1994), fn. 2, citing *1275 Lansdowne v. Beacon Journal Publishing Co. , 32 Ohio St.3d 176, 180-181, 512 N.E.2d 979 (1987).
{¶ 47} Where clear and convincing proof is required at trial, a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof. In re T.S. , 8th Dist. Cuyahoga No. 92816, 2009-Ohio-5496, 2009 WL 3321019, ¶ 24, citing State v. Schiebel , 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). Judgments supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. Id.
{¶ 48} With respect to G.M. and C.M., the agency requested permanent custody in the dependency complaint under R.C. 2151.353(A)(4). When proceeding on a complaint with an original dispositional request for permanent custody, the trial court must satisfy two statutory requirements before ordering a child to be placed in the permanent custody of a children's services agency. The trial court must find
in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D)(1) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child.
R.C. 2151.353(A)(4).
1. First Prong of R.C. 2151.353(A)(4) and R.C. 2151.414(B)(1)
{¶ 49} As stated, R.C. 2151.353(A)(4) first required the juvenile court to determine that G.M. and C.M. could not be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(E) lists factors for determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with his or her parents.[2] If the *1276 court determines, by clear and convincing evidence, that one or more of the factors listed exist as to each of the child's parents, R.C. 2151.414(E) directs that "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent."
{¶ 50} In its judgment entries awarding permanent custody to CCDCFS, the juvenile court found by clear and convincing evidence that each child could not be placed with their mother within a reasonable time or should not be placed with their mother. The court relied on the factors set forth under 2151.414(E)(1)-(4), (13) and (16), stating, in relevant part:
Upon due consideration of the evidence and testimony presented, as well as the report from the Guardian ad Litem, and the agreement of Father, the court finds by clear and convincing evidence that the child cannot be placed with his mother within a reasonable time or should not be placed with his mother for the following reasons:
* * *
Following the placement of the child outside the home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the mother and father have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home.
Mother has a chronic mental illness and chemical dependency that is so severe that it makes the parent unable to provide an adequate, permanent home for the child at the present time and, as anticipated, within one (1) year after the Court holds the hearing in this matter.
Mother has neglected the child between the date of the original complaint was filed and the date of the filing of this motion by the failure to regularly visit, communicate, and/or support the child.
Mother has demonstrated a lack of commitment towards the child by failing to regularly support, visit, communicate, and/or by her actions, has shown an unwillingness to provide an adequate, permanent home for the child.
Mother is repeatedly incarcerated and the repeated incarceration prevents the mother from providing care for the child.
{¶ 51} With respect to J.F., R.C. 2151.414(B) also considers whether a child "cannot be placed with either parent within a reasonable time or should not be placed with the child's parents." See R.C. 2151.414(B)(1)(a). However, R.C. 2151.414(B)(1)(a) only applies if the child is not abandoned or orphaned or has not been in the temporary custody of the agency *1277 for 12 months out of consecutive 22-month period. When a child has been in the custody of CCDCFS for 12 months out of a consecutive 22-month period, R.C. 2151.414(B)(1)(d) is controlling.
{¶ 52} In this case, the court found by clear and convincing evidence that J.F. was placed in the agency's custody on March 17, 2015 and, therefore, has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period. Under these circumstances, we find the court improperly applied R.C. 2151.414(B)(1)(a) to J.F.'s case. Nevertheless, we find no error because the court's decision reflects that the court considered R.C. 2151.414(B)(1)(a) in the alternative while also making its finding under R.C. 2151.414(B)(1)(d). See In re R.T. , 2016-Ohio-8490, 79 N.E.3d 138, ¶ 39.
{¶ 53} On appeal, Mother does not dispute the juvenile court's finding that J.F. has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period. See R.C. 2151.414(B)(1)(d). In addition, Mother does not challenge the trial court's R.C. 2151.414(E) findings and concedes that "she is not ready to assume full-time responsibility of her [children]." For these reasons, we find the first prongs of R.C. 2151.353(A)(4) and 2151.414(B) have been satisfied by clear and convincing evidence. Accordingly, the sole issue before this court is whether there was sufficient evidence to support the court's conclusion that permanent custody was in the children's best interests.
2. The Juvenile Court's Best Interests Determination
{¶ 54} In this case, Mother argues that the juvenile court's best interest determination is not supported by clear and convincing evidence and is against the manifest weight of the evidence.
{¶ 55} We review a trial court's determination of a child's best interest under R.C. 2151.414(D) for abuse of discretion. In re D.A. , 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, 2010 WL 4684918, ¶ 47. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore , 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). While a trial court's discretion in a custody proceeding is broad, it is not absolute. "A trial court's failure to base its decision on a consideration of the best interests of the child constitutes an abuse of discretion." In re N.B. , 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, 2015 WL 406036, ¶ 60, citing In re T.W. , 8th Dist. Cuyahoga No. 85845, 2005-Ohio-5446, 2005 WL 2600663, ¶ 27 ; In re Adoption of Ridenour , 61 Ohio St.3d 319, 574 N.E.2d 1055 (1991).
{¶ 56} In determining the best interest of a child at a hearing held pursuant to R.C. 2151.414(A)(1) or for the purposes of 2151.353(A)(4), the juvenile court must consider all relevant factors, including, but not limited to, the following:
(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
(d) The child's need for a legally secure permanent placement and whether that *1278 type of placement can be achieved without a grant of permanent custody to the agency;
(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D)(1).
{¶ 57} Although a trial court is required to consider each relevant factor under R.C. 2151.414(D)(1) in making a determination regarding permanent custody, "there is not one element that is given greater weight than the others pursuant to the statute." In re Schaefer , 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. This court has stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. In re Moore , 8th Dist. Cuyahoga No. 76942, 2000 WL 1231467 (Aug. 31, 2000), citing In re Shaeffer Children , 85 Ohio App.3d 683, 621 N.E.2d 426 (3d Dist.1993).
{¶ 58} A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. In re Adoption of Ridenour , 61 Ohio St.3d 319, 324, 574 N.E.2d 1055 (1991). Accordingly, the willingness of a relative to care for a child does not alter what the court must consider in determining permanent custody. In re A.D. , 8th Dist. Cuyahoga No. 85648, 2005-Ohio-5441, 2005 WL 2600638, ¶ 12, citing In re Benavides , 8th Dist. Cuyahoga No. 78204, 2001 WL 470177 (May 3, 2001). "A court is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody." In re V.C. , 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, 2015 WL 7777606, ¶ 62, quoting In re M.S. , 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, 2015 WL 1276469, ¶ 11.
{¶ 59} In this case, the juvenile court's journal entries reflect that the court considered all of the relevant factors under R.C. 2151.414(D)(1) in determining that an award of permanent custody to the agency was in the children's best interests. The juvenile court explained its evaluation of these factors as follows:
Testimony revealed that the child suffers from severe, mental and physical delays to such a degree that both mother and maternal grandmother could not adequately meet the needs of the child. To extend temporary custody is not in the child's best interests due to mother's repeated incarceration and her failure to meet the case plan objectives. Further, to grant legal custody to maternal grandmother with the child's special needs would not be in the child's best interests.
Upon consideration of the interaction and interrelationship of the child with the child's parents, siblings, relatives, and foster parents; the wishes of the child; the custodial history of the child, including whether the child has been in temporary custody of a public children services agency or private child placing agency under one or more separate orders of deposition for twelve (12) or more months of a consecutive twenty-two (22) month period; the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and the report of the Guardian ad Litem, the agreement of Father, the court finds by clear an convincing evidence that a grant of permanent custody is in the best interests of the child[ren] * * *.
The court finds that the child[ren]'s continued residence in or return to the home of Mother will be contrary to the child[ren]'s best interests.
*1279 {¶ 60} After careful consideration of the testimony presented at the permanent custody hearing, we find there is competent, credible evidence in the record to support the juvenile court's reliance on the factors set forth under R.C. 2151.414(D) and its conclusion that permanent custody to the agency is in children's best interests.
{¶ 61} First, with respect to the children's relationship with their relatives and foster parents, CCDCFS social worker Hill testified that Mother and maternal grandmother love the children very much and that the children love them. Hill testified, however, that Mother has a history of being late for visitation appointments and often missed appointments entirely. In addition, Hill described the children's visits with Mother and maternal grandmother as "chaotic." She explained that Mother often made inappropriate statements to the children that created "turmoil." Similarly, the GAL described the visits between the children and maternal grandmother as "wild-[the children] were kind of all over." Further, Hill testified that she does not believe Mother or maternal grandmother have the ability to meet the special needs of the children.
{¶ 62} In contrast, Hill testified that the children have made "tremendous progress" with the foster parents. The evidence demonstrated that the children have bonded with their foster parents and that the foster parents "have gone far and beyond" to meet the children's basic and special needs. At the hearing, the children's foster parents, K.S. and L.N., testified at length concerning each child's behavioral issues, medical conditions, and delayed development. K.S. and L.N. testified about the extensive actions they have taken in an effort to address the children's special needs. Hill testified that since the children have been placed with the foster parents, the children's mental health, speech, and behavior improved. Further, K.S. and L.N. each testified that they intended to adopt the children if the trial court granted permanent custody to CCDCFS.
{¶ 63} With respect to the wishes of the children, the GAL for the children testified that, although the children did not directly express their wishes to him given their age, he recommended that the court grant permanent custody of the children to CCDCFS. The GAL further opined that, based on his personal observations, he did not believe legal custody to maternal grandmother was in the children's best interests.
{¶ 64} Finally, as to whether the children's need for a legally secure permanent placement could be achieved without a grant of permanent custody, Mother argues that the award of legal custody to maternal grandmother is a legally secure placement that is both in the children's best interest and "less drastic" than the termination of parental rights. Mother contends that legal custody to maternal grandmother is preferable because it would allow the three children to stay together in one household.
{¶ 65} R.C. 2151.414(D), however, does not make the availability of a placement that would not require a termination of parenting rights an all-controlling factor, and does not even require the court to weigh that factor more heavily than other factors. In re Schaefer , 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 63. Furthermore, while family unity and blood relationship are vital factors to carefully and fully consider in all custody matters, biological relationship cannot be controlling in itself. In re J.B. , 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, 2013 WL 1799849, ¶ 111, citing In re T.W. , 8th Dist. Nos. 86084, 86109, and 86110, 2005-Ohio-6633, 2005 WL 3436341, ¶ 15. Nor is the existence of a positive relationship, in itself, *1280 controlling. Id. The paramount consideration remains the best interest of the child.
{¶ 66} In this case, the evidence demonstrated that, although the maternal grandmother has a genuine desire to have legal custody of her grandchildren, she was unable to meet their special needs. Hill testified that the agency considered maternal grandmother for placement, but determined that she could not provide the children with appropriate care given her history with the agency. Hill explained that when G.M. was being cared for by maternal grandmother, she permitted him to be alone with Mother despite Mother's ongoing substance abuse issues. Hill further referenced maternal grandmother's "extensive history with the agency mostly for educational neglect," and testified that maternal grandmother "has not shown in the past that she has been able to provide the special needs that [the children] need." Viewing this testimony in conjunction with all other best interest factors, we find the evidence reasonably supports the trial court's conclusion that maternal grandmother "could not adequately meet the needs of the children" and that permanent custody should be awarded to CCDCFS.
{¶ 67} On this record, we cannot say the trial court abused its discretion in determining, based on all the relevant factors, that permanent custody was in the children's best interests. Unquestionably, the children's physical, developmental, and emotional issues detailed in this case are directly related to circumstances that led to their removal from Mother's care. These young children need to be cared for and nurtured in a stable, secure, and structured environment. After careful consideration, we agree with the trial court that such an environment can only be ensured by granting permanent custody of the children to the agency. Because permanent custody to the agency is in the children's best interests, legal custody to a maternal grandmother necessarily is not.
{¶ 68} We overrule Mother's sole assignment of error and affirm the trial court's decisions awarding permanent custody of each child to CCDCFS and terminating Mother's parental rights.
{¶ 69} Judgment affirmed.
FRANK D. CELEBREZZE, JR., J., CONCURS;
MARY EILEEN KILBANE, P.J., DISSENTS WITH SEPARATE OPINION
MARY EILEEN KILBANE, P.J.
{¶ 70} I respectfully dissent. I would reverse the trial court's decision awarding permanent custody of J.F., G.M., and C.M. to CCDCFS. I do not find that separating J.F. from his siblings and separating the three siblings from their maternal grandmother is in their best interest.[3]
*1281 {¶ 71} It is a well-known principle that the termination of parental rights is "the family law equivalent of the death penalty in a criminal case; therefore, parents must be afforded every procedural and substantive protection the law allows." (Citations omitted.) In re D.A. , 113 Ohio St.3d 88, 91, 2007-Ohio-1105, 862 N.E.2d 829. "The termination of parental rights should be an alternative of 'last resort.' " Id. , citing In re Cunningham , 59 Ohio St.2d 100, 105, 391 N.E.2d 1034 (1979). Indeed, the goal of the case plan for the siblings in this case is reunification with the parents.
{¶ 72} When considering the best interest factors in R.C. 2151.414(D), the first factor involves the interaction and interrelationship of each child with the child's parents, siblings, and other relatives and significant people in the child's life. R.C. 2151.414(D)(1)(a). This best interest factor is "highly significant" and "focuses on a critical component of the permanent custody test: whether there is a family relationship that should be preserved." In re A.W. , 9th Dist. Lorain No. 09CA009631, 2010-Ohio-817, 2010 WL 761327, ¶ 14, citing In re C.M. , 9th Dist. Summit No. 21372, 2003-Ohio-5040, 2003 WL 22187268, ¶ 11.
{¶ 73} I would find that the evidence before the court on this factor weighs heavily in favor of preserving the family relationship, especially when the evidence in the record indicates that when J.F. was with L.N. and his siblings, she indicated to Hill that she wanted a change in his placement. The record is clear that the maternal grandmother has taken care of both J.F. and G.M. She was not able to take care of C.M. because he was taken into CCDCFS custody after birth. Maternal grandmother actively sought legal custody of all three children and has shown a bond with the three siblings. Indeed, the social worker, GAL, and both foster mothers could not deny maternal grandmother's bond with her grandchildren. Mother recognizes that she is not capable of caring for her children and asked the trial court for the next best thing-for her children to be with their maternal grandmother. If the children are with their maternal grandmother, the ties between mother and her children and the children and their relatives will remain.
{¶ 74} Here, the GAL for the child reported that J.F. was too young to indicate his wishes. While the GAL recommended for permanent custody, he did acknowledge that maternal grandmother had bonded with the children. Maternal grandmother testified that she would be able to provide for her grandchildren's needs. She sought legal custody, and testified that she is committed to enrolling the boys in the proper programs and schools. Maternal grandmother testified that she completed the required fingerprinting and drug screen; however, CCDCFS never got back to her about her application. The fact that there is a loving and committed placement with the maternal grandmother cannot be discounted.
{¶ 75} In light of the foregoing, I would find that the trial court abused its discretion when it determined that permanent custody was in the best interest of the children. I would reverse the trial court's decision granting permanent custody to CCDCFS.

Division (B) provides:
(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.
(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.
For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.

R.C. 2151.414(E) provides, in relevant part:
(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties;
(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code ;
(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child;
* * *
(16) Any other factor the court considers relevant.

It is important to note that maternal grandmother and Mother each filed a motion for legal custody to the maternal grandmother. Maternal grandmother's attempt to intervene and seek legal custody was denied by the trial court in September 2016. Mother moved for legal custody to maternal grandmother under R.C. 2151.42(A), which provides: "[a]t any hearing in which a court is asked to modify or terminate an order of disposition issued under [R.C. 2151.353, 2151.415, or 2151.417 ], the court, in determining whether to return the child to the child's parents, shall consider whether it is in the best interest of the child." Ultimately, Mother's motion was denied by the trial court when it granted permanent custody to CCDCFS in February 2017. The majority concludes that Mother does not have standing to assert any error with the trial court's failure to give legal custody to the grandparent. I disagree. I would find that Mother has standing to argue the trial court's denial of her motion for legal custody to maternal grandmother because (1) maternal grandmother was denied permission to become a party in the case; (2) Mother filed the motion on her mother's behalf; (3) the trial court denied Mother's motion in the same journal entry granting permanent custody to CCDCFS.