[Cite as *In re D.P.*, 2020-Ohio-17.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

    D.P.

    DEPENDENT CHILD

JUDGES:
Hon. William B. Hoffman, P. J.
Hon. John W. Wise, J.
Hon. Patricia A. Delaney, J.

Case No. 2019CA0008

O P I N I O N

CHARACTER OF PROCEEDING:    Civil Appeal from the Court of Common Pleas, Juvenile Division, Case No. 21730035

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    January 6, 2020

APPEARANCES:

For Appellee CCJFS

CHRISTIE M.L. THORNSLEY
ASSISTANT PROSECUTOR
318 Chestnut Street
Coshocton, Ohio  43812

For Appellant-Mother

E. MARIE SEIBER
6525 Walkers Lane SE
Uhrichsville, Ohio  44683

*Wise, J.*

{¶1}     Appellant Stephanie S. appeals the decision of the Coshocton County Court of Common Pleas, Juvenile Division, which granted permanent custody of her minor son, D.P., to Appellee Coshocton County Job and Family Services. The relevant facts leading to this appeal are as follows.

{¶2}     On June 29, 2017, Appellee CCJFS filed a complaint in the trial court alleging that D.P., born in 2015, was a dependent and neglected child. CCJFS alleged *inter alia* that there were concerns of parental drug abuse, unstable and unsafe home conditions, mental health issues, and domestic violence in the home. Following a shelter care hearing, D.P was placed in the temporary custody of CCJFS.

{¶3}     On September 20, 2017, appellant stipulated to a dependency finding. A case plan was presented to the trial court, and, as to disposition, D.P. was ordered to be maintained in the temporary custody of CCJFS.

{¶4}     On September 6, 2018, CCJFS filed a motion for permanent custody.

{¶5}     An evidentiary hearing was scheduled for December 14, 2018. However, on November 1, 2018, about six weeks before the hearing, one of D.P.'s maternal aunts, Jolene B., contacted the agency caseworker and requested a home study for placement and potential legal custody of the child. Tr. 183, 239.[1]

{¶6}     According to the record before us, CCJFS generally contracts for home studies with an outside specialist, Marcia Schmitt. However, upon receipt of Jolene B.'s November 1, 2018 request, the assigned CCJFS caseworker, Erin Heard, decided not to

---

[1]   By that time, the agency had already considered and rejected two other relatives for potential placement and/or legal custody. We presently find it unnecessary to recite the details of these investigations by the agency.

make a referral to Schmitt; instead, she essentially reviewed the aunt's extensive prior Ohio children services involvement in Ohio via the Statewide Automated Child Welfare Information System ("SACWIS"). Tr. at 238. Based on this review, the agency did not pursue Jolene B. as a potential person for placement or eventual legal custody. Caseworker Heard also found out later that appellant and Jolene B. were living in the same home. Heard later testified that had she known of this arrangement, Jolene's request would have been automatically denied. Tr. at 239.

{¶7} The permanent custody motion was heard by the trial court on December 14, 2018 and January 12, 2019. The trial court issued a 21-page decision granting permanent custody to the agency on March 21, 2019, approximately five months after the aforesaid request by the aunt, Jolene B., for a home study.

{¶8} On April 22, 2019, appellant-mother filed a notice of appeal. She herein raises the following two Assignments of Error:

{¶9} "I. THE COURT ERRED AS A MATTER OF LAW BY PROCEEDING TO A BEST INTEREST ANALYSIS WITHOUT FIRST FINDING THAT THERE HAD BEEN SUBSTANTIAL COMPLIANCE WITH OHIO ADMINISTRATIVE CODE §5101:2-42 *ET SEQ.* REGARDING RELATIVE PLACEMENT BY COSHOCTON COUNTY JOB AND FAMILY SERVICES WITH MATERNAL AUNT, JOLENE B.

{¶10} "II. II. THE FINDING BY THE COURT THAT JFS HAD PROPERLY FINALIZED A PERMANENCY PLAN WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE DUE TO JFS'S FAILURE TO CONDUCT A HOME SAFETY AUDIT AND HOME STUDY IN SUBSTANTIAL COMPLIANCE WITH OHIO ADMINISTRATIVE CODE §5101:2-42 *ET SEQ.* FOR MATERNAL AUNT JOLENE B."

I.

**{¶11}** In her First Assignment of Error, appellant contends the trial court erred in failing to determine whether the agency had substantially complied with OAC 5101:2-42 *et seq.* regarding D.P.s maternal aunt, prior to the court granting permanent custody of D.P. to CCJFS. We disagree.

**{¶12}** OAC 5101:2-42 sets forth the regulations applicable to public children services agencies' authority to place a child in a substitute home. *In re A.F.*, 12th Dist. Butler No. CA2019-01-005, 2019-Ohio-4627, ¶ 61. In particular, OAC 5101:2-42-05(A) states: "When a child cannot remain in his or her own home, the public children services agency (PCSA) or private child placing agency (PCPA) shall explore both maternal and paternal relatives including a non-custodial parent regarding their willingness and ability to assume temporary custody or guardianship of the child. Unless it is not in the child's best interest, the PCSA or PCPA shall explore the non-custodial parent before considering other relatives."

**{¶13}** R.C. 2151.353(A)(3) provides, in pertinent part: "If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition: * * * Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. * * *." *See, also, Matter of C.C.*, 5th Dist. Muskingum No. CT2017-0085, 2018-Ohio-2686, ¶ 16. If permanent custody to an agency is in a child's best interests, "legal custody to [a relative] necessarily is not." *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, ¶ 61. But

it has also been aptly recognized that, as a general rule, "a parent has no standing to assert that the court abused its discretion by failing to give [a third party] legal custody; rather, the challenge is limited to whether the court's decision to terminate parental rights was proper." *In re S.C.*, 8th Dist. Cuyahoga No. 106701, 2018-Ohio-2523, 115 N.E.3d 813, ¶ 16 (citations and internal quotations omitted).

**{¶14}** The trial court's grounds for granting permanent custody in the case *sub judice* were primarily based on R.C. 2151.414(B)(1)(a). *See* Judgment Entry at 15, 17. The focus of this statutory subsection is whether there is clear and convincing evidence that it is in the best interest of the child to grant permanent custody to the agency and that "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." In determining this question of whether a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents, a trial court is mandated to consider all relevant evidence in light of the factors set forth in R.C. 2151.414(E), including the catch-all "any other factor the court considers relevant."

**{¶15}** However, appellant herein provides no clear authority for her proposition that substantial compliance with the regulations for substitute care and relative placements in OAC 5101:2-42 functions as a mandatory hurdle to be cleared before a trial court may grant permanent custody to an agency. Indeed, "*** OAC Section 5101 pertains to [an agency's] obligations and its determination regarding substitute-care placement, rather than a trial court's permanent custody determination." *In re S.C.*, *supra*, at ¶ 62, citing *In re J.F.*, 8th Dist. Cuyahoga No. 105504, 2018-Ohio-96, 102 N.E.3d 1264, ¶ 36.

**{¶16}** In the case *sub judice*, appellant states that for purposes of this appeal, her unfitness as a parent "is admitted." Appellant's Brief at 8. Upon review, we find the trial court, relying *inter alia* on R.C. 2151.414(B)(1)(a), 2151.414(D)(1), and 2151.414(E), duly heard the evidence and rendered a detailed and lawful decision accordingly. We conclude the grant of permanent custody of D.P. to CCJFS was made in the consideration of the child's best interests and did not constitute reversible error.

**{¶17}** Appellant's First Assignment of Error is therefore overruled.

II.

**{¶18}** In her Second Assignment of Error, appellant contends the trial court erred in concluding that CCJFS had properly finalized a permanency plan, alleging that the home study concerning the aunt, Jolene B., was not done in substantial compliance with OAC 5101:2-42, *et seq.* We disagree.

**{¶19}** R.C. 2151.412(A) states as follows:

(A) Each public children services agency and private child placing agency shall prepare and maintain a case plan for any child to whom the agency is providing services and to whom any of the following applies:

(1) The agency filed a complaint pursuant to section 2151.27 of the Revised Code alleging that the child is an abused, neglected, or dependent child;

(2) The agency has temporary or permanent custody of the child;

(3) The child is living at home subject to an order for protective supervision;

(4) The child is in a planned permanent living arrangement.

**{¶20}** Generally, the case plan serves as the permanency plan for the child. *See In re S.R.,* 9th Dist. Summit No. 27209, 2014-Ohio-2749, ¶ 41.

**{¶21}** Appellant, in similar fashion to her argument in the first assigned error, fails to present any clear authority that substantial compliance with the regulations for substitute care and relative placements in OAC 5101:2-42 is a prerequisite to the trial court accepting an agency's permanency plan for a dependent child subject to the court's jurisdiction in a permanent custody matter.[2]

**{¶22}** Appellant's Second Assignment of Error is therefore overruled.

**{¶23}** For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Coshocton County, Ohio, is hereby affirmed.

By: Wise, J.

Hoffman, P. J., and

Delaney, J., concur.

JWW/d 1219

---

[2]  Furthermore, although not discussed in the briefs, case planning is specifically addressed in another regulatory chapter, OAC 5101:2-38.