[Cite as *In re T.G.*, 2018-Ohio-502.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In re: | : | |
| | | No. 17AP-411 |
| T.G., | : | (C.P.C. No. 15JU-2726) |
| (T.G., | : | (REGULAR CALENDAR) |
| Appellant). | : | |

---

### D E C I S I O N

Rendered on February 8, 2018

---

**On brief:** *Jaqueline J. Rapier*, for appellee.

**On brief:** *Yeura R. Venters*, Public Defender, and *Robert D. Essex*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch.

KLATT, J.

{¶ 1} Appellant, the biological mother of T.G., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, that terminated her parental rights and placed her child in the permanent custody of Franklin County Children Services ("the agency"). For the following reasons, we affirm that judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

{¶ 2} Mother and father are the unmarried parents of T.G., who was born on August 7, 2011. T.G. is a medically fragile child. She was born with cytomegalovirus which results in bilateral deafness. She also has cerebral palsy and a seizure disorder. In July 2014, a social worker from Nationwide Children's Hospital reported to the agency her

concern regarding T.G. having missed many appointments and mother being noncompliant since 2012. Upon the birth of a younger sibling who tested positive for marijuana in August 2014, mother voluntarily opened a case with the agency. Father filed for custody and became T.G.'s legal custodian on October 6, 2014. However, on December 9, 2014, in case No. 14JU-16083, the agency filed a complaint in the trial court alleging that T.G. was an abused, neglected, and dependent child and sought an emergency order of temporary custody after T.G. was admitted to Nationwide Children's Hospital the previous day. The complaint alleged that T.G. had a lacerated liver, a broken rib, possible healing fractures in her ankles, and bruises in various stages of healing. It also detailed that T.G. has severe medical conditions which have caused cognitive and developmental delays including hearing loss, inability to walk, and requiring a pureed diet due to an inability to chew. Temporary custody was awarded to the agency and T.G. was placed in a foster home.

{¶ 3} A second, identical complaint was filed in case No. 15JU-2726 on March 5, 2015 because the previous case was due to expire by operation of law. The trial court held an adjudicatory hearing on March 12, 2015. By agreement of the parties, the complaint was amended and mother and father did not contest the abuse allegation in the first cause of action. The magistrate found the child to be abused as set forth in the first cause of action and dismissed the remaining causes of action. The agency developed, and the trial court adopted, a case plan in order to facilitate the reunification of T.G. and her parents. Significant components of that plan required the parents to attend parenting classes and doctor's appointments, to maintain stable housing and legal income, to complete psychological assessments, to complete all random drug/alcohol screens required, and to follow all recommendations for drug/alcohol treatment.

{¶ 4} On October 29, 2015, the agency filed its first motion for permanent custody. A second motion was filed on August 30, 2016. Service of the second motion was perfected on mother and father, and father failed to appear for the hearing. After the two-day hearing, the trial court found that T.G. had been in the temporary custody of the agency for more than 12 of the prior consecutive 22 months and that a grant of permanent custody to the agency would be in the child's best interest. Therefore, the trial court terminated the parents' parental rights and placed T.G. in the permanent custody of the agency.

**THE APPEAL**

{¶ 5}  Mother appeals the decision of the trial court and assigns the following error:

> The trial court committed reversible error by terminating Appellant's parental rights.

## STANDARD OF REVIEW

{¶ 6}  The right to parent one's child is a fundamental right. *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000); *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 28. That right, however, is not absolute. *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, ¶ 11. Although termination of parental rights should be an alternative of last resort, such termination may occur if it is necessary for the best interest of the child. *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶ 41.

{¶ 7}  R.C. 2151.414 establishes the two-part test a juvenile court must apply in ruling on a motion by a public children services agency for permanent custody of a child. *In re D.A.* at ¶ 12; *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, ¶ 9. A juvenile court may grant permanent custody of a child to a public children services agency if, after a hearing, it determines by clear and convincing evidence that (1) any of the circumstances in R.C. 2151.414(B)(1)(a) through (e) exist, and (2) such relief is in the best interest of the child. R.C. 2151.414(B)(1). The circumstances enumerated in R.C. 2151.414(B)(1) are:

> (a) [T]he child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.
>
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
>
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period.
>
> (e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 8}   Once a juvenile court determines that one of the circumstances in R.C. 2151.414(B)(1) applies, it must then decide whether a grant of permanent custody is in the best interest of the child. Pursuant to R.C. 2151.414(D)(1), to make this decision, the juvenile court must "consider all relevant factors, including, but not limited to, the following:"

> (a)  The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b)  The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c)  The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period;
>
> (d)  The child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e)  Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 9}   An appellate court will not reverse a juvenile court's determination in a permanent custody case unless that determination is against the manifest weight of the evidence. *In re B.W.*, 10th Dist. No. 15AP-38, 2015-Ohio-2360, ¶ 12. In reviewing the judgment of the juvenile court, an appellate court must make every reasonable presumption in favor of the judgment and the juvenile court's findings of fact. *In re A.B.*, 10th Dist. No. 15AP-105, 2015-Ohio-3849, ¶ 25. If the evidence is susceptible to more than one construction, an appellate court must give the evidence that interpretation which is consistent with the judgment. *Id.* With these precepts in mind, we must weigh the evidence and all reasonable inferences to determine whether the juvenile court " 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *In re G.D.*, 10th Dist. No. 14AP-801, 2015-Ohio-1969, ¶ 28, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

**ANALYSIS**

{¶ 10}   The juvenile court found that the first prong of the permanent custody test was satisfied because T.G. had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period.  Mother did not dispute that finding.  Thus, the agency satisfied the first part of the two-part test the juvenile court applies to decide whether to grant permanent custody of a child to a public children services agency.

{¶ 11}   We next review whether the evidence proves that a grant of permanent custody to the agency is in T.G.'s best interest.  In large part, the juvenile court's decision to grant the agency permanent custody turned on its conclusion that T.G. has a great need of a secure permanent placement to continue her development physically, educationally, emotionally, and socially, and that could not be achieved without granting the agency permanent custody.

{¶ 12}   The trial court addressed each of the factors in R.C. 2151.414(D).  With regard to R.C. 2151.414(D)(1)(a), the trial court noted that mother is bonded with T.G. and interacted appropriately when she attended visitation with her daughter.  Although mother testified that T.G. is bonded to her, the case worker and guardian ad litem disagreed.  The case worker noted that T.G. is easily separated from her mother after visits.  The trial court contributed this to mother's inconsistency with her visitation.  Of the 112 visits offered, mother attended only 50.  As part of her case plan, mother was also supposed to attend T.G.'s medical appointments.  However, during the pendency of the case, mother attended only 20-25 of the 158 medical appointments for T.G.  She also participated in only four of the specialty or clinic appointments and does not have an understanding of how to perform many of the tasks necessary for T.G.'s care such as working the feeding tube or Cochlear implant.  Mother testified that she found it difficult to attend all the visits and medical appointment due to her work schedule and the need to take care of her three younger children.  But, mother was provided a monthly letter which detailed T.G.'s upcoming appointments, offered bus passes, cab fare, and gas cards, and offered the chance to change the visitation day or time.  At times, mother has brought her boyfriend and three other children to visit T.G.  There is no evidence, however, that T.G. has bonded with her siblings or her mother's boyfriend.

{¶ 13} T.G. has resided in the same foster family since placed in the agency's custody. There are six other children, some with special needs, and one special needs adult in the home. The foster parents are retired and are devoted to providing for the needs of their family. T.G. has positive interactions with the other children and has integrated well into the family. The foster mom detailed the extensive daily care and medical appointments that T.G. requires. The foster parents would be a potential adoptive home for T.G. This factor weighs in favor of the trial court's decision.

{¶ 14} With regard to R.C. 2151.414(D)(1)(b), the trial court noted that T.G. was five years old at the time of the hearing and had special needs and developmental delays. T.G., therefore, was too young and immature to express her wishes or to understand the proceedings. The guardian ad litem testified that she recommended that the trial court grant permanent custody to the agency. This factor also weighs in favor of the trial court's decision.

{¶ 15} For R.C. 2151.414(D)(1)(c), the trial court found that T.G. was removed from her home under a temporary order of custody in the prior case No. 14JU-16083 since December 10, 2014. From that time, T.G. has been in the custody of the agency. When the August 30, 2016 motion for permanent custody had been filed, T.G. had been in the temporary custody of the agency for 20 months, more than the required 12 months of a consecutive 22-month period. This factor also weighs in favor of the trial court's decision.

{¶ 16} With regard to R.C. 2151.414(D)(1)(d), the trial court began by stating that T.G. is a medically fragile child who has a great need of a legally secure permanent placement. The trial court acknowledged that mother was not responsible for the physical harm that precipitated the opening of the case, but also indicated that mother had neglected T.G.'s needs by missing medical appointments and clinics that T.G.'s acute developmental delays required in the two years prior to the filing of case No. 14JU-16083.

{¶ 17} Mother was aware of the requirements of her case plan and yet failed to substantially comply with it. At the time of the hearing, mother had obtained steady housing and income, attended some counseling, and completed the general parenting classes. As previously noted, however, mother had failed to attend over half of her visitation with T.G. and the majority of T.G.'s medical appointments and clinics. Since December

2016 to the date of the hearing, mother had not attended any visitation or medical appointment. She also stopped calling and texting foster mom for updates on the child.

{¶ 18} An additional requirement of the case plan was for mother to complete random drug screens. Due to her changeable work schedule, mother would call in her work schedule and drug testing times would be arranged. Despite this and the offer of transportation assistance, mother missed 63 of the 75 drug screens that were required by her case plan. Of the 12 screens taken, mother tested positive two times for alcohol and one time for OxyContin, which mother claims was prescribed. Mother stopped taking any drug tests in July 2016. We conclude that this factor weighs in favor of the trial court's decision.

{¶ 19} In her appellate brief, mother appears to argue that the trial court erred in granting the agency permanent custody because poverty does not justify the termination of parental rights and because the physical abuse that placed T.G. in the temporary custody of the agency was committed by father. Mother testified at times she struggled with finances and transportation. She paid child support for T.G. and stated that it was almost half of her check. The agency, however, offered her cab fare, bus passes, and gas cards to help mother get to medical appointments, visitation, and drug testing. The agency also referred mother to Guidestone which would have helped with her transportation issues and additional resources. There is no indication that mother's financial status factored into the trial court's decision. Furthermore, the trial court stated in its decision that it knew that mother was not responsible for the physical abuse T.G. suffered. It also found fault with mother for not addressing T.G.'s medical needs when she was in mother's custody. The trial court expressed concern that mother still did not seem to comprehend how her failure to complete her case plan was the result of her own actions. Instead, mother seemed to place blame with the agency, her case worker, and to a certain extent the foster parents.

{¶ 20} After reviewing the totality of the evidence and mother's arguments, we conclude that the trial court did not err by terminating mother's parental rights and granting permanent custody to the agency. Accordingly, we overrule mother's sole assignment of error, and hereby affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

TYACK and BRUNNER, JJ., concur.