[Cite as *In re BR*, 2019-Ohio-2178.]

IN THE COURT OF APPEALS OF OHIO

TENINTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | |
| B.R., | : | No. 18AP-903 |
| | | (C.P.C. No. 17JU-2246) |
| (S.H., | : | |
| | | (ACCELERATED CALENDAR) |
| Appellant). | : | |
| In the Matter of: | : | |
| J.R., | : | No. 18AP-904 |
| | | (C.P.C. No. 16JU-10687) |
| (S.H., | : | |
| | | (ACCELERATED CALENDAR) |
| Appellant). | : | |

D E C I S I O N

Rendered on May 31, 2019

**On brief***: Alex J. Pomerants*, for appellant S.H.

**On brief:** *Carrie D. Wolfe*, for appellee Franklin County Children Services.

**On brief:** *Thomas Waldeck*, Guardian ad litem.

APPEALS from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch

BEATTY BLUNT, J.

{¶ 1} In this consolidated appeal, appellant S.H. appeals the November 13, 2018 decision and judgment entry from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, terminating her parental rights and granting permanent custody of J.R. and B.R. to Franklin County Children Services ("FCCS").

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}  Appellant S.H. is the children's biological mother. C.R. is their biological father. Together S.H. and C.R. have had five children. C.R. has at least two other children; one is in the custody of FCCS, and the other has been adopted. The couple's oldest three children, born in 2012, 2013, and 2014, are in the custody of their paternal grandmother. The two youngest children, J.R. and B.R., are the subject of these proceedings.

### A. J.R.

{¶ 3}  J.R. was born on December 17, 2015. He was born prematurely at 29 weeks gestation and required extensive hospitalization. S.H. did not receive any prenatal care during her pregnancy. J.R. tested positive for Oxycodone and benzodiazepines at birth. S.H. admitted to using illicit drugs throughout her pregnancy.

{¶ 4}  FCCS received an emergency custody order for J.R. before he was released from the hospital on March 23, 2016. FCCS received a temporary order of custody for J.R. on March 24, 2016 and again on June 15, 2017. He has been in the custody of FCCS since he was released from the hospital.

{¶ 5}  FCCS filed a complaint alleging J.R. to be abused, neglected, and dependent on September 7, 2016. Both S.H. and C.R. appeared at the adjudicatory hearing on the complaint on October 21, 2016. At the conclusion of that hearing, the court found J.R. to be an abused child pursuant to R.C. 2151.031(C). It continued the temporary custody order.

{¶ 6}  Neither parent appeared for the dispositional hearing on December 5, 2016. The court ordered temporary court commitment of J.R. to FCCS and adopted Case Plan No. 2.

{¶ 7}  On March 27, 2017, the court extended the temporary order of custody and the case plan. On June 14, 2017, it adopted amended Case Plan No. 2.01.

{¶ 8} FCCS filed its motion seeking permanent custody of J.R. on August 23, 2017.

**B. B.R.**

{¶ 9} B.R. was born February 12, 2017. At the time of her birth, she tested positive for Percocet and opiates. S.H. did not receive any prenatal care during her pregnancy with B.R. and admitted to using illicit drugs during the pregnancy.

{¶ 10} FCCS filed a complaint on February 21, 2017, alleging B.R. to be abused, neglected, and dependent. On that same date, prior to her release from the hospital, FCCS received emergency custody of B.R. On February 22, 2017, FCCS received temporary custody of B.R. B.R. has been in the custody of FCCS since she was released from the hospital following her birth.

{¶ 11} Neither parent appeared for the adjudicatory hearing on April 24, 2017. The court declared B.R. to be an abused child, pursuant to R.C. 2151.031(C), a neglected child, pursuant to R.C. 2151.03(A)(2), and a dependent child, pursuant to R.C. 2151.04(C). The court then proceeded to the dispositional hearing, after which it issued a temporary court commitment of B.R. to FCCS and adopted Case Plan No. 2.02.

{¶ 12} FCCS filed its motion seeking permanent custody of B.R. on January 23, 2018.

**C. Permanent Custody Hearing**

{¶ 13} The permanent custody hearing for both children was held on October 15, 2018. Both S.H. and C.R. had contested the motions for permanent custody, but only S.H. appeared, with counsel, at the hearing. Counsel had been appointed to represent C.R. as to the motion for permanent custody for J.R. The children's guardian ad litem ("GAL") also appeared for the hearing, as did counsel for FCCS and the assigned FCCS caseworker.

{¶ 14} Three witnesses testified at the hearing: S.H., the GAL, and the FCCS caseworker.

{¶ 15} S.H. testified that she was an addict for four years and that both children tested positive for drugs at the time of their birth because of her addiction. (Oct. 15, 2018 Tr. at 24-25.) S.H. admitted to actively using drugs when she was pregnant with J.R. and B.R. (Id. at 27.) She testified that she was incarcerated from April 4, 2017 until November 30, 2017 because she violated a condition of her probation by testing positive for illegal substances. (Id. at 22.) S.H. testified that she is no longer an addict. (Id. at 30-31.)

{¶ 16} S.H. represented to the court that she finished her whole case plan, but she had difficulty doing the American Court Services ("ACS") drug screens and making visits with her children because of her work schedule. (Id. at 28-29.) She goes to meetings for her previous drug use but she stated that she does not need to and does not need further treatment. (Id. at 31.) S.H. admitted that she only completed one drug screen through ACS, which was positive. (Id. at 35-36.) She failed to complete approximately 60 drug screens that were required by the court and the case plan. (Id. at 36.) Because S.H. is on probation, however, she is screened as a part of that process and represented that she has had over 60 negative urine tests through probation since her release from jail in November 2017. (Id. at 81-82.)

{¶ 17} As to the parenting class portion of the case plan, S.H. testified that she completed an online course but could not recall what she learned in that course. (Id. at 43-44, 60.) She did some parenting programming while she was incarcerated. (Id. at 58.) This programming included a nutrition class, anger management classes, drug treatment programs, and academic classes to help S.H. get her G.E.D. (Id. at 71-75.) She admitted that she never completed an alcohol and drug ("AOD") assessment. (Id. at 60.)

{¶ 18} S.H. was offered weekly visits with her children. (Id. at 46.) She missed many visits due to her addiction, though. (Id. at 46.) She did not attend any visits from September 2016 until her incarceration in April 2017. (Id. at 49-50.) She visited with the children approximately 14 times from January 2018 through April 2018. (Id. at 95-96.) She did not attend any visits from May 10, 2018 until August 2018. (Id. at 49, 97-98.) S.H. gave various reasons for missing visits: her addiction, failings by the caseworker, S.H.'s bronchitis, and work obligations. (Id. at 53.) At the time of the hearing, S.H. had not attended any visits for over one and one-half months. (Id. at 66-67.) S.H. testified that she would "set up daycare or, you know, have a babysitter or something" for the children while she worked if they were returned to her custody. (Id. at 78.) She believes her children are very bonded to her. (Id. at 89.) As for the children's father, C.R., S.H. testified that he is still battling a drug addiction. (Id. at 92.)

{¶ 19} Ava Nelson, the caseworker assigned to the cases, testified regarding the requirements of the case plan for reunification. It required the parents to complete drug and alcohol assessments, complete drug screens, take medication as prescribed, complete any other requested assessments, and complete parenting mentoring. (Id. at 120.) Visitation was also a part of the case plan. Nelson testified that S.H. completed AOD treatment when she was incarcerated. (Id. at 122.) Nelson tried but was unable to determine whether there was an actual AOD assessment. She could only confirm that S.H. completed the treatment. (Id. at 122.) Nelson testified that she believes S.H. met the alcohol and drug assessment objectives of the case plan, though. (Id. at 141, 152-53.)

{¶ 20} Nelson confirmed that S.H. only completed one drug screen through ACS, although she reminded S.H. about the need to complete screens through ACS. (Id. at 127.) Nelson contacted S.H.'s probation officer, but was only able to confirm that S.H. was

completing screens and those screens were negative. (Id. at 126.) The probation officer would not provide copies of the screens. Nelson testified that S.H. has not completed the case plan's drug screening requirement, and Ms. Nelson was consequently unable to assess whether S.H. has maintained her sobriety. (Id. at 141.)

{¶ 21} Ms. Nelson was unable to determine whether S.H. had learned anything from the online parenting class she took because S.H. had not visited the children recently so that Nelson could assess her parenting. (Id. at 130, 141.) Nelson testified that S.H. was provided 68 visits with her children starting from the time J.R. was placed in FCCS custody, and she only attended 24 visits. (Id. at 132.) She testified that there was one year, September 21, 2016 through October 25, 2017, in which neither parent attended any scheduled visits with the children. (Id. at 183.) During the visits Nelson observed, she testified that S.H. seemed comfortable with the children, was starting to be able to anticipate their needs, and focuses on the children during the visits. (Id. at 134-35.) Nelson never observed any concerning behavior. (Id. at 135.) The children seem to like S.H. and have some bond to her. (Id. at 137-38.) But they are very bonded to their foster family, with whom they have been since birth, and are excited to return to their foster parents after the visits with S.H. (Id. at 138.) Nelson testified that the children's ability to bond with their parents is impaired when there are long gaps of time between visits. (Id. at 199-200.) Nelson indicated that the foster family is a potential adoptive home for the children. (Id. at 150.)

{¶ 22} Nelson testified that the children's father, C.R., has not completed any portion of the case plan, and Nelson has been unable to locate him since July 2018. (Id. at 122-23, 141-43, 148.) He has attended 6 out of 68 scheduled visits with the children. (Id. at

145.) When she last spoke with him, C.R. indicated that he "was not interested in doing case plan tasks" and was leaving it up to S.H. to get the children back. (Id. at 143.)

{¶ 23} Nelson recommended that the court grant FCCS's motion and award FCCS permanent custody of the children. (Id. at 150-51.)

{¶ 24} The GAL assigned to the children, Thomas Waldeck, testified and recommended that the court grant FCCS's motion for permanent custody. (Id. at 222.) Due to the children's young age, they were unable to verbalize their thoughts and wishes regarding custody. Therefore, his recommendation was made based upon his observations of the children. He indicated that S.H.'s sporadic visitation with the children "is not sufficient to support a finding that reunification is in the best interest of the children." (Id. at 223.)

### D. Judgment Entry Granting Permanent Custody

{¶ 25} Following the hearing, the trial court issued its order granting FCCS's motion for permanent custody of both children. It found that the reunification plans proposed by FCCS and ordered by the court were "reasonable and appropriate" to enable the parents to remedy the issues that led to the removal of J.R. and B.R. (Nov. 13, 2018 Jgmt. Entry at 11.) The plans required the parents to (1) complete an AOD assessment and follow the assessors' recommendations thereafter; (2) complete drug screens through ACS, with negative results, and remain sober; (3) participate in parent mentoring; and (4) ensure that the children's medical, physical, educational, and psychological needs are met. Under the case plans, missed drug screens count as positive screens.

{¶ 26} The trial court found that S.H. failed to complete the AOD assessment, despite multiple orders and opportunities to do so. S.H. failed to provide evidence of completion of parenting programs or certification of completion of a drug program. Rather,

S.H. testified that she had done several different parenting programs and completed some drug programming while she was incarcerated from April 4 through November 30, 2017. Despite being given numerous resources for appropriate parenting classes she could take to meet the case plan requirements, S.H. chose to complete a different online course. At the hearing, she could not recall what she learned in that course, and the content of that course was never submitted into evidence. The trial court found no evidence that the course had any impact on S.H.'s parenting.

{¶ 27} The court further found that S.H. only completed one drug screen through ACS, which was positive. After that screen, she gave birth to B.R., who tested positive for illicit substances. S.H. failed to complete 60 screens while she was not incarcerated. Despite S.H.'s testimony that she thought the screens she did for probation were enough to satisfy the case plan requirements, she did not provide evidence regarding the dates of those screens, what substances were tested, and whether the screens were random. Further, S.H. was informed multiple times that she needed to complete screens through ACS yet still failed to do so.

{¶ 28} As to visitation, the trial court found that the case plans provided that the parents would have supervised visitation with the children for at least one hour each week. The trial court found that S.H. visited J.R. consistently between March and September 21, 2016. She then completely failed to visit either child at all between September 21, 2016 and April 2017. S.H. was arrested for violating community control on April 4, 2017. While she was incarcerated, the FCCS caseworker brought the children to visit her. After S.H. was released on November 30, 2017, she did not resume visits with her children until January 2018. She visited them consistently through April 2018, but then did not visit them at all between May 31 and August 2, 2018. S.H. attempted to visit the children on September 27,

2018, but they were not transported to the supervising facility. A make-up visitation was scheduled for October 2, 2018, but S.H. failed to show up for that visit. The evidence showed that S.H. was invited to attend medical and therapy appointments with the children but never did.

{¶ 29} Although S.H. testified that she had a full-time job, the trial court found that she did not have a "viable plan" for childcare for the children while she was at work for approximately 11 hours a day. (Jgmt. Entry at 14.)

{¶ 30} As to the father, C.R., the trial court found that he failed to complete any provision of any case plan for reunification. He did not provide any drug screens, did not complete an AOD assessment, and did not provide any evidence that he took or completed any parent mentoring or parenting classes. He attended only 6 out of 68 offered visitations.

{¶ 31} The trial court concluded that S.H. "failed continuously and repeatedly to substantially remedy the conditions" causing the children to be placed in FCCS custody. (Jgmt. Entry at 16.) C.R. has abandoned the children.

{¶ 32} Although the children's paternal grandmother, who has custody of the children's three older siblings, filed a motion to be made a party and to receive custody of J.R., she never attended any court hearings. Her request had already been dismissed. She had never requested custody of B.R. The trial court found that there was no potential or appropriate relative placement options for the children.

{¶ 33} In assessing the children's best interests, the trial court found:

> [J.R. and B.R.] each need permanency in a stable, fully supportive, and special family. Even if Parents were willing to put the needs of the Children before their own, it is unlikely either or both could adequately provide for either of the Children's physical, medical, emotional, and educational needs.

(Jgmt. Entry at 14.) Likewise, the court found that S.H. "has, at best, a minimal relationship" with the children, and their father has "no relationship" with the children. (Jgmt. Entry at 15.) "Both Children look to their foster parents to meet their educational, medical, and emotional needs." (Jgmt. Entry at 15.)

{¶ 34} Although the children are both too young to adequately verbalize their wishes, the court considered the GAL's testimony that their behavior supports a recommendation that the court grant FCCS's motion for permanent custody.

{¶ 35} From these findings and the evidence submitted at the hearing, the trial court found that neither child can be placed with one or both of their parents now or within a reasonable time because the parents are not willing or able to meet the children's needs. (Jgmt. Entry at 15.) J.R. has been in FCCS custody for over two years. The children do not meet the requirements for a planned permanent living arrangement. Finally, the court found "by clear and convincing evidence" that granting the motion for permanent custody is in the children's best interests. (Jgmt. Entry at 15.)

## II. ASSIGNMENT OF ERROR

{¶ 36} Appellant S.H. raises one assignment of error in her appeal:

> The trial court did abuse its discretion by granting the Franklin County Children Services Motion for Permanent Custody of the minor children.

## III. STANDARD OF REVIEW

{¶ 37} A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re Andy-Jones*, 10th Dist. No. 03AP-1167, 2004-Ohio-3312, ¶ 28; *In re B.B.H.*, 10th Dist. No. 14AP-882, 2015-Ohio-2347, ¶ 14. "Judgments are not against the manifest weight of the evidence when all material elements are supported by competent, credible evidence." *In re J.T.*, 10th Dist. No.

11AP-1056, 2012-Ohio-2818, ¶ 8. Accordingly, an appellate court " 'will not overturn a permanent custody order when it is supported by competent, credible evidence.' " *In re M.W.*, 10th Dist. No. 11AP-524, 2011-Ohio-6392, ¶ 20, quoting *In re Siders*, 10th Dist. Franklin No. 96APF04-413, 1996 Ohio App. LEXIS 4805 (Oct. 29, 1996), citing *In re Brofford*, 83 Ohio App.3d 869, 876-77 (10th Dist.1992). "Where clear and convincing proof is required at trial, a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof." *In re J.F.*, 8th Dist. No. 105504, 2018-Ohio-96, ¶ 47, citing *In re T.S.*, 8th Dist. No. 92816, 2009-Ohio-5496, ¶ 24. "In reviewing a judgment granting permanent custody to FCCS, an appellate court 'must make every reasonable presumption in favor of the judgment and the trial court's findings of facts.' " *Id.*, quoting *In re P.G.*, 10th Dist. No. 11AP-574, 2012-Ohio-469, ¶ 37. " '[I]f the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment.' " *In re Brooks*, 10th Dist. No. 04AP-164, 2004-Ohio-3887, ¶ 59, quoting *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988).

## IV. LEGAL ANALYSIS

{¶ 38} Parents have a fundamental, constitutionally protected interest in the care, custody, and management of their children. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *In re Murray*, 52 Ohio St.3d 155, 157 (1990); *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 28. "Parental rights, however, are not absolute, and a parent's natural rights are always subject to the ultimate welfare of the child." *In re E.B.*, 10th Dist. No. 16AP-352, 2017-Ohio-2672, ¶ 19, citing *In re K.M.*, 10th Dist. No. 15AP-64, 2015-Ohio-4682, ¶ 15, and *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979).

{¶ 39} R.C. 2151.413 permissively allows a public agency to file a motion requesting permanent custody of a child under certain circumstances. When the child has been in the temporary custody of a public agency for 12 or more months out of a consecutive 22 month period, though, the agency *must* file for permanent custody. R.C. 2151.413(D)(1).

{¶ 40} R.C. 2151.414(B)(1) permits a court to grant permanent custody of a child to a public agency if, after a hearing, it determines "by clear and convincing evidence, that '(1) any of the circumstances in R.C. 2151.414(B)(1)(a) through (d) exist, and (2) such relief is in the best interest of the child.' " *In re E.B.* at ¶ 22, quoting *In re K.M.*, 10th Dist. No. 15AP-64, 2015-Ohio-4682, ¶ 14. Thus, "[a] decision to award permanent custody requires the trial court to take a two-step approach." *In re K.L.*, 10th Dist. No. 13AP-218, 2013-Ohio-3499, ¶ 18. "First, a trial court must determine if any of the factors set forth in R.C. 2151.414(B)(1) apply." *Id.* Second, the court determines whether granting permanent custody to FCCS is in the best interests of the child. *Id.* Clear and convincing evidence means evidence that creates a firm belief or conviction as to the facts sought to be established. *In re E.B.* at ¶ 22, citing *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶ 42; *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 41} Relevant to this appeal, R.C. 2151.414(B)(1) provides the following circumstances under which FCCS can move for permanent custody:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.
>
> * * *

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.

* * *

{¶ 42} R.C. 2151.414(D)(1)(a) through (e) sets forth the relevant factors that the court should consider in determining what is in the best interests of the child:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

* * *

{¶ 43} "R.C. 2151.414(D) does not require courts to deny a children services agency's motion for permanent custody solely by virtue of a parent's substantial compliance with the case plan." *In re Brooks* at ¶ 62. It "is but one of the many factors the court may find relevant." *Id.* at ¶ 63. As we have previously recognized, " 'the nature of the relationship between a parent and child may certainly be affected by the concerns presented by the case plan and the parent's success in addressing those concerns.' " *Id.*, quoting *In re V.Y.*, 9th Dist. No. 03CA008404, 2004-Ohio-1606, ¶ 31.

{¶ 44} When, as here, one of the bases upon which permanent custody is sought is R.C. 2151.414(B)(1)(a), R.C. 2151.414(E) provides guidance on analyzing whether a child can be reunited with his or her parents. It provides:

> In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
>
> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
>
> * * *
>
> (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
>
> * * *
>
> (10) The parent has abandoned the child.
>
> * * *
>
> (16) Any other factor the court considers relevant.

{¶ 45} In her appellate brief, S.H. argues that the trial court erred by failing to acknowledge that she (1) has completed an AOD assessment and followed the

recommendations; (2) has consistently completed negative drug screens in the course of her probation; (3) has completed parenting classes; and (4) can ensure that the children's medical, physical, educational, and emotional needs are met. S.H. further argues that the trial court impermissibly found a link between the lack of parental visitation and a negative effect on the children. These failures, according to S.H., resulted in the trial court abusing its discretion.[1]

{¶ 46} As an initial matter, S.H.'s arguments all appear to target whether R.C. 2151.414(B)(1)(a) has been satisfied as to both children. But it is undisputed that J.R. has been in custody for more than 12 months out of a 22-month period. That alone satisfies the first part of the analysis as to J.R., pursuant to R.C. 2151.414(B)(1)(d). "[A]s long as a child meets the '12 of 22' requirement, an agency is no longer required to prove that a child cannot be returned to the parents within a reasonable time or should not be returned to the parents." *In re E.B.*, 12th Dist. No. CA2009-10-139, 2010-Ohio-1122, ¶ 20, citing *In re C.W.* 104 Ohio St.3d 163, 2004-Ohio-6411, ¶ 21. "The finding that a child has been in custody for 12 of 22 months completely obviates consideration of whether the child can be placed with her parents within a reasonable time." *Id.* at ¶ 26, citing *In re T.T.*, 12th Dist. No. CA2004-07-075, 2005-Ohio-240.

{¶ 47} S.H.'s arguments on appeal are based on whether the children can be reunified with her because she has substantially followed the case plan's requirements. *See*

---

[1] S.H.'s counsel misstates the relevant standard of review applicable to the trial court's decision. As earlier noted, we apply a manifest weight of evidence standard to the court's permanent custody determination, not an abuse of discretion standard. *In re J.R.*, 10th Dist. No. 17AP-698, 2018-Ohio-1474, ¶ 34 ("A trial court's determination in a PCC case will not be reversed on appeal unless it is against the manifest weight of the evidence."). It is generally a juvenile court's rulings on motions that are subject to an appellate abuse of discretion standard. *See, e.g., In re Williams*, 10th Dist. No. 03AP-1007, 2004-Ohio-678, ¶ 5.

R.C. 2151.414(B)(1)(a) and 2151.414(E)(1). Regarding a parent's substantial compliance with a child welfare agency's case plan, Ohio courts have recognized:

> [I]t is well-settled that the completion of case plan services alone does not equate to, or necessitate a finding that the parents have substantially remedied the conditions that caused the removal of the child from the home. *In re Mraz*, Brown App. Nos. CA2002-05-011, CA2002-07-014, 2002 Ohio 7278, ¶ 13. A parent can successfully complete the requirements of a case plan, but not substantially remedy the conditions that caused the children to be removed, as the case plan is "simply a means to a goal, but not the goal itself." *In re C.C.*, Cuyahoga App. Nos. 94013, 94014, 2010-Ohio-780, ¶ 25.

*In re E.B.*, 12th Dist. No. CA2009-10-139, 2010-Ohio-1122, ¶ 30; *see also In re J.G.*, 11th Dist. No. 2015-L-102, 2016-Ohio-896, ¶ 74 (although the parents "may have satisfied the case plan goals, they have not adequately satisfied those goals so as to be able to provide [the child] a secure placement."); *In re Conn*, 10th Dist. No. 03AP-348, 2003-Ohio-5344, ¶ 19 ("Substantial completion of case plan requirements does not preclude a grant of permanent custody to a social services agency. In this case, we must consider whether the parent has substantially remedied the conditions that caused the child's removal."). Thus, the central focus here is whether S.H. has substantially remedied the conditions that caused the children's removal.

{¶ 48} As to S.H.'s first argument, the court did not err in failing to find that S.H. completed an AOD assessment pursuant to the case plan. S.H. testified that she received drug treatment when she was incarcerated, but admitted that she did not complete an AOD assessment. There was no documentation that she had ever received an AOD assessment. The caseworker, Nelson, testified that she tried but was unable to verify whether there was an AOD assessment completed. She could only testify that S.H. completed some drug treatment during her incarceration. Thus, the absence of evidence that S.H. even

substantially completed this portion of the case plan casts significant doubt on whether the children can be placed with S.H. within a reasonable time and whether S.H. has remedied the condition that caused her children to be removed from her custody in the first instance.

{¶ 49} S.H. also argues that the trial court failed to acknowledge that she has consistently completed negative drug screens. But the drugs screens were not completed through ACS, as the court and case plan required. Rather, S.H. wants the court to accept the urine screens she completed as part of her probation. There was no admissible evidence regarding the frequency of those screens or the procedures used to test the urine samples. It is not clear what substances are tested for as part of that screen and whether they are the same substances for which ACS would have tested. S.H. was informed and reminded multiple times that she needed to complete her drug screens through ACS in order to complete that portion of the case plan. The sole screen she completed through ACS tested positive for an illicit substance. S.H. failed to complete approximately 60 drug screens through ACS. The case plan explicitly stated that missed drug screens count as positive drug screens. S.H.'s probation was revoked and she was incarcerated due to a positive urine screen with CBCF. Both children were placed in FCCS custody as a result of S.H.'s admitted drug use. Plainly, the only evidence before the trial court that S.H. is maintaining her sobriety is S.H.'s own testimony. All other evidence casts doubt onto whether she has maintained sobriety.  S.H. failed to show that she has remedied the condition – her drug use – that led to the removal of J.R. and B.R. from her custody.

{¶ 50} S.H. next argues that the trial court failed to acknowledge that she has completed a parenting class. The trial court did acknowledge that S.H. testified that she completed an online parenting class. But the trial court found that insufficient. S.H. was unable to recall anything that she had learned during that class. Her failure to attend

visitations prohibited FCCS from assessing whether the programming positively impacted S.H.'s ability to parent her children. The caseworker indicated that it would have been helpful for S.H. to complete parenting mentoring as outlined in the case plan. The evidence further showed that S.H. had been provided numerous resources for parenting classes but she failed to utilize any of those programs.

{¶ 51} This same evidence undermines S.H.'s argument that she is able to meet the children's medical, physical, educational, and emotional needs. She failed to show that she has remedied the condition that led to the children's removal. Her failure to consistently attend scheduled visits impaired any ability to determine whether she could anticipate and meet the children's needs. She did not have a reasoned plan for obtaining childcare for the children while she works. She failed to attend scheduled medical appointments for the children, including an appointment for J.R. that required her authorization to obtain treatment. Taken together, there is competent, credible evidence to support the trial court's finding that S.H. in most respects failed to complete the case plan and failed to show that she has remedied the condition that led to the children's removal. The court's determination that granting permanent custody to FCCS is not against the manifest weight of evidence.

{¶ 52} Finally, S.H. argues that the trial court impermissibly found a link between her lack of parental visitation and a negative impact on the children. Although it is not clear what factual finding S.H. refers to in this argument, Nelson testified that children's ability to bond with their parents is impaired when there are long gaps between visits or infrequent visitation. She also testified that the children are very bonded to their foster family and only somewhat bonded to S.H. Likewise, the GAL testified that S.H.'s sporadic visitation with

the children "is not sufficient to support a finding that reunification is in the best interest of the children." (Oct. 15, 2018 Tr. at 223.)

{¶ 53} This case is similar to a case this court recently decided. *See In re T.G.*, 10th Dist. No. 17AP-411, 2018-Ohio-502. In that case, like here, the mother interacted appropriately with her daughter, had obtained housing and steady employment, and had completed some parenting classes. Nonetheless, we affirmed the trial court's decision to grant permanent custody to FCCS because the mother failed to substantially comply with the case plan. *Id.* at ¶ 17. She had attended only 50 of 112 scheduled visits and missed 63 of 75 scheduled drug screens. Because of the infrequent visits, the child was easily separated from her mother after scheduled visits. The mother did not take responsibility for her failure to comply with the case plan, instead blaming the agency, her caseworker, and the foster parents. Under those facts, which are mirrored here, the trial court's determination that the mother failed to comply with the case plan and failed to show that she remedied the condition that cause the children's removal was supported by competent, credible evidence. The determination that granting permanent custody to FCCS was not against the manifest weight of evidence.

{¶ 54} As to C.R.'s parental rights to both children, the trial court found that C.R. has abandoned the children. *See* R.C. 2151.414(B)(1)(b). No party has appealed that determination.

{¶ 55} Upon our thorough review of all of the evidence presented at trial in this case, we determine that there is competent and credible evidence to support the trial court's conclusion that a permanent commitment is in the children's best interest and in accordance with the law. The trial court's decision is not against the manifest weight of evidence. We overrule appellant S.H.'s sole assignment of error. We affirm the decision of

the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile

Branch granting permanent custody of J.R. and B.R. to FCCS.

*Judgment affirmed.*

BRUNNER and NELSON, JJ., concur.

———————————