[Cite as *In re S.L.C.*, 2021-Ohio-3932.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

IN RE S.L.C., ET AL.                    :

Minor Children                          :               No. 110491

                                        :

[Appeal by Mother, B.M.]                :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 4, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-18-907297 and AD-18-907298

---

***Appearances:***

Erin R. Flanagan, Esq., Ltd., and Erin R. Flanagan, *for
appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph Young, Assistant Prosecuting
Attorney, *for appellee.*

ANITA LASTER MAYS, J.:

{¶ 1}  Appellant B.M. ("Mother") appeals the juvenile court's termination of

her parental rights to her minor children R.M. and S.L.C. ("the children") and the

permanent award of custody to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). We affirm the judgment of the trial court.

{¶ 2} In June 2018, during a predispositional temporary custody hearing the children alleged to be abused and neglected and were removed from the care of Mother and Father.[1] On August 28, 2018, at the adjudicatory hearing, Mother stipulated to an amended complaint that alleged the children were neglected. The trial court subsequently adjudicated the children neglected. A case plan was developed to address Mother's substance abuse and mental health issues. On April 24, 2019, CCDCFS filed a motion to modify temporary custody to permanent custody for the children. Mother requested six continuances of trial dates from October 2019, and March 2021, to permit her to continue working on her case plan. On March 26, 2021, at the beginning of trial Mother requested a final continuance to be placed in sober housing that would also house the children. The trial court denied the motion. Trial was held and the trial court terminated Mother's parental rights and ordered the children placed in the permanent custody of CCDCFS.

I.    Facts and Procedural History

A.    Social Worker Testimony

{¶ 3} During the March 26, 2021 trial, the state presented two witnesses. Aimee Shipman ("Shipman"), the social worker assigned to Mother's case, testified first. Shipman stated that she was assigned to the case in March 2019, and the

---

[1] Father died of an overdose in August 2019, and therefore, is not a subject in this appeal.

children were taken into CCDCFS custody in June 2018, because of Mother's substance abuse issues. (Tr. 23.) Shipman testified that it was the goal of CCDCFS to reunify the children with their mother and a case plan was developed for Mother with that goal in mind. *Id.* Shipman stated that the case plan services included mental health and substance abuse services for Mother. (Tr. 24.) Shipman also testified that a case plan was also established for Father. *Id.* However, Father passed away in September 2019 due to a drug overdose. (Tr. 25.) As a result, Father is no longer a part of this case.

{¶ 4} Shipman stated that, before March 2019, Mother was referred to Catholic Charities' substance abuse program. Mother did not participate in the program nor did she complete treatment for substance abuse. (Tr. 26.) Mother was also referred to Signature Health for mental health services, and did not attend its services either. Additionally, after a hair screen Mother tested positive for fentanyl. (Tr. 29.) As a result, CCDCFS filed a motion to modify temporary custody to permanent custody of the children. The trial date was set for October 2019.

{¶ 5} The trial date was continued because during the summer of 2019, Mother had surgery and before trial Mother enrolled in Windsor-Laurelwood to start substance abuse treatment, and Father passed away. However, Mother did not complete the program, she tested positive for drugs, and spent a month in jail. (Tr. 28.) After Mother was released from jail, she was placed in Stella Maris, a chemical dependency treatment facility. Mother was discharged around the

beginning of March 2020, although in January 2020, Mother tested positive for cocaine and fentanyl. *Id.*

**{¶ 6}** After Mother was discharged from Stella Maris, she moved into Walton House, a sober living House in April 2020. (Tr. 30.) Shipman testified that Mother left Walton House after a week or two, but agreed to continue to do its aftercare program. Mother completed the program in May 2020. CCDCFS tested Mother for drugs in September 2020, and Mother told Shipman that "she was just buying bags of white powder and using them." (Tr. 33.) Mother tested positive for fentanyl.

**{¶ 7}** As a result of the positive test, Mother was sent back to Stella Maris Detox Program and then back to Walton House. (Tr. 34.) It was recommended to Mother that she enroll in a more intense program, but Mother declined. Mother successfully completed the program, and moved to Sharon's House sober living. At the time of trial, Mother was still living at Sharon's House. (Tr. 36.) Shipman discussed with Mother about moving into Mommy and Me, a sober living house where the children can live with Mother. *Id.* Mother then stated that she was not ready to move from Sharon's House to Mommy and Me because she was very comfortable at Sharon's House.

**{¶ 8}** Shipman testified that Mother's case has been pending for three years while Mother abides by her case plan. (Tr. 38.) Shipman also testified that "mom is able to maintain her sobriety when she's in a controlled environment." (Tr. 40.)

However, "the agency's concern is when she leaves that controlled environment is she going to be able to maintain that." *Id.*

{¶ 9} Shipman also stated that the children have been in care for most of their lives and there are not suitable family members to care for them. The children have bonded with their foster parents and are very happy in their home. (Tr. 45.) Shipman stated that Mom had two-hour visits every week with the children and would consistently show up to the visits 20 minutes or more late. *Id.* The agency has a policy that if you are more than 15 minutes late for a visit, they would cancel it. However, they would give Mother more time because the children traveled more than 2 hours each for the visits. *Id.*

{¶ 10} Shipman testified that Mother was good with her children, she played with them, fed them and responded to their cues. (Tr. 46-47.) Shipman also testified that Mother "knows that the children are in a very good home and if the children cannot come home to her, she would like where the children are currently placed to be the ones to adopt the children." (Tr. 49.)

**B. Guardian Ad Litem's Testimony**

{¶ 11} Tyrone Fazio ("Fazio"), the guardian ad litem submitted his report and put his report and recommendation on the record. Fazio stated that Mother "has been given numerous opportunities to try to address her substance abuse issues and to be able to provide for these children." (Tr. 69.) Fazio also stated that the children are in a caring home. However, Fazio opposed the motion for permanent custody. Fazio stated that his recommendation was "based on the fact that the

mother had been consistent in her program from approximately September, October of last year to the present." (Tr. 70.) However, Fazio acknowledged that "there is a statutory issue * * * in regard to the time elements on cases." *Id.* Fazio also expressed that he "would oppose the motion for permanent custody today as not being in the children's best interest, but that once again is contingent upon the follow through by the mother in this program." (Tr. 72.) Fazio also suggested that the court "extend this case in some manner to give" mother that opportunity. *Id.*

### C. Trial Court's Decision

{¶ 12} At the end of the trial, the trial court stated that "I'll get the decision out to you." (Tr. 98.) The trial court later awarded permanent custody of the children to CCDCFS, and stated in its journal entry,

> Upon due consideration of the evidence and testimony presented, and notwithstanding the report from the Guardian ad Litem, the Court finds by clear and convincing evidence that the child[ren] cannot be placed with the mother or father within a reasonable time or should not be placed with the mother or father for the following reasons: The child has been in temporary custody of the Cuyahoga County Division of Children and Family Services which is for twelve (12) or more months of a consecutive twenty-two (22) month period. The child[ren] has been in temporary custody since September 21, 2018.

Journal entry Nos. 0914624631 and 0914624634 (Apr. 9, 2021).

{¶ 13} Mother has filed this timely appeal assigning one error for our review:

> Termination of Appellant's parental rights and award of permanent custody to the agency is against the manifest weight of the evidence and constitutes a denial of due process of law.

## II.   Standard of Review

{¶ 14} "[T]o terminate parental rights and grant permanent custody to a county agency, the record must demonstrate by clear and convincing evidence the following:   (1) the existence of one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (d); and (2) permanent custody is in the best interest of the child." *In re S.H.*, 8th Dist. Cuyahoga Nos. 97992, 97993, and 97994, 2012-Ohio-4064, ¶ 27.  "Clear and convincing evidence" is that quantum of evidence that instills in the trier of fact a firm belief or conviction as to the allegations sought to be established.  *In re Y.V.*, 8th Dist. Cuyahoga No. 96061, 2011-Ohio-2409, ¶ 13, citing *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

{¶ 15} When determining the child's best interest pursuant to R.C. 2151.414(D)(1), courts analyze the following factors:   (a) the interaction and interrelationship of the child with others; (b) the wishes of the child; (c) the custodial history of the child; (d) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (e) whether any of the factors in divisions R.C. 2151.414(E)(7) to (11) apply.

{¶ 16} Also,

> [a] juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence "'if the record contains some competent, credible evidence from which the court could have found that the essential statutory elements for permanent custody had been established by clear and convincing evidence.'"

*In re G.W.*, 8th Dist. Cuyahoga No. 107512, 2019-Ohio-1533, ¶ 62, quoting *In re A.P.*, 8th Dist. Cuyahoga No. 104130, 2016-Ohio-5849, ¶ 16.

{¶ 17} The "best interest determination" focuses on the child, not the parent. R.C. 2151.414(C); *In re Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist.1994). The discretion that the juvenile court enjoys in deciding whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's decision will have on the lives of the parties concerned. *Id.* at 316.

{¶ 18} Thus, we review "a trial court's determination of a child's best interest under R.C. 2151.414(D) for abuse of discretion." *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, ¶ 52, citing *In re L.O.*, 8th Dist. Cuyahoga No. 101805, 2015-Ohio-1458, ¶ 22. "An abuse of discretion implies that the court's decision was unreasonable, arbitrary or unconscionable." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 19} R.C. 2151.353(A)(4) authorizes a trial court to grant permanent custody to an agency where a child has been adjudicated neglected, dependent, or abused. The trial court must determine by clear and convincing evidence that: (1) "the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent" pursuant to R.C. 2151.414(E); and (2) "permanent commitment is in the best interest of the child" pursuant to R.C. 2151.414(D)(1). R.C. 2151.353(A)(4).

## III. Law and Analysis

{¶ 20} The trial court has authority to grant permanent custody to CCDCFS where, as in this case, a child has been adjudicated as neglected, dependent, or abused.

> When an agency files a permanent custody motion under R.C. 2151.413 after obtaining temporary custody, the guidelines and procedure set forth under R.C. 2151.414 apply. Division (B) of R.C. 2151.414 sets forth a two-prong analysis to be applied by a juvenile court. Pursuant to this division, before a trial court can terminate parental rights and grant permanent custody to a county agency, the court must find by clear and convincing evidence (1) the existence of any one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (e), and (2) that granting permanent custody to the agency is in the best interest of the child.

*In re J.F.*, 2018-Ohio-96, 102 N.E.3d 1264, ¶ 45 (8th Dist.).

{¶ 21} "Only one of the four factors must be present for the first prong of the permanent custody analysis to be satisfied. Once the juvenile court ascertains that one of the four factors listed in R.C. 2151.414(B)(1) is present, then the court proceeds to an analysis of the child's best interest." *In re J.B.*, 8th Dist. Cuyahoga No. 98565, 2013-Ohio-1705, ¶ 80-81. Regarding the first prong of the analysis, the record reveals that the children were initially placed in CCDCFS's care on June 8, 2018 and temporary custody was granted in September 2018. The trial court stated in its journal entries,

> The child[ren] has been in temporary custody of the Cuyahoga County Division of Children and Family Services which is for twelve (12) or more months of a consecutive twenty-two (22) month period. The child[ren] has been in temporary custody since September 21, 2018.

Journal entry Nos. 0914624631 and 0914624634 (Apr. 9, 2021).

{¶ 22} In its journal entries, the trial court also listed a number of reasons why permanent custody should be awarded to CCDCFS, in accordance with R.C. 2151.414(E)(1) and (4). The court stated:

> Following the placement of the child[ren] outside of the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, mother has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

Journal entry Nos. 0914624631 and 0914624634 (Apr. 9, 2021).

{¶ 23} We recognize that "a parent's right to raise a child is an essential and basic civil right." *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). And the permanent termination of parental rights has been described as "the family law equivalent of the death penalty in a criminal case." *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14. Also, "'termination of the rights of a birth parent is an alternative of last resort.'" *In re Gill*, 8th Dist. Cuyahoga No. 79640, 2002-Ohio-3242, ¶ 21, quoting *In re Wise*, 96 Ohio App.3d 619, 624, 645 N.E.2d 812 (9th Dist.1994), citing *In re Cunningham*, 59 Ohio St.2d 100, 105, 391 N.E.2d 1034 (1979).

{¶ 24} We do not agree with Mother that the trial court's determination to award permanent custody to CCDCFS is premature. However, we also recognize that a trial court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence "if the record contains some competent,

credible evidence from which the court could have found that the essential statutory elements for permanent custody had been established by clear and convincing evidence." *In re A.P.*, 8th Dist. Cuyahoga No. 104130, 2016-Ohio-5849, ¶ 16.

{¶ 25} According to Shipman, Mother was referred to a substance abuse program and a mental health service that she did not attend. Shortly thereafter, Mother tested positive for fentanyl. Months later, Mother was again referred to another substance abuse treatment, where she did not complete the program, tested positive for drugs, and spent a month in jail. After she was released from jail, Mother was placed in a chemical dependency treatment facility, and before she was discharged, she tested positive for cocaine and fentanyl.

{¶ 26} The trial court stated in its journal entries that Mother's dependency on drugs is so severe that it makes her unable to provide an adequate and permanent home for the children at the present time and within one year after the trial. R.C. 2151.414(E)(2). Testimony revealed that although Mother attended visitations with the children, she was consistently 20 minutes or more late. Because the children traveled two hours for visitation the agency did not follow the 15-minute late visitation cancellation policy and waited for Mother. The trial court determined that Mother has demonstrated a "lack of commitment towards the children by failing to regularly support, visit, or communicate" with them when she is able to do so. R.C. 2151.414(E)(4). The trial court also stated that Mother is "unwilling to provide food, clothing, shelter, and other basic necessities for the children," which

is "evidenced by her unwillingness to successfully complete a case plan." R.C. 2151.414(E)(14). Journal entry Nos. 0914624631 and 0914624634 (Apr. 9, 2021).

**{¶ 27}** Additionally, the trial court listed other factors, stating:

> Testimony revealed that mother has not tested positive for an illegal substance since September 2020. However, the children have been in the temporary custody since September 2019. Since coming into temporary custody, mother has been in and out of treatment and appears to only remain drug free when in a controlled environment such as "Sharon's House." "This does not convince this Court that mother has the ability to remain drug free."

Journal entry Nos. 0914624631 and 0914624634 (Apr. 9, 2021).

**{¶ 28}** The record reveals that the trial court accurately captured Shipman's testimony regarding Mother's numerous failed attempts to complete substance abuse treatment, Mother's subsequent sobriety while in sober housing, and the length the children have been in agency custody. The record supports that the first prong of the two-part test was satisfied where the trial court found by clear and convincing evidence that in accordance with R.C. 2151.414(B)(1)(d), the children have "been in the temporary custody of the Cuyahoga County Division of Children and Family Services which is for twelve (12) or more months of consecutive twenty-two (22) month period." Journal entry Nos. 0914624631 and 0914624634 (Apr. 9, 2021).

**{¶ 29}** As the factfinder in this case, the trial court was in the best position to determine the credibility of the witnesses and observe their demeanor. As we recently stated:

> "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court."
>
> The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page. * * *
>
> "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.["]
>
> "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal."
>
> This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well. (Citations omitted.)

*In re I.S.*, 8th Dist. Cuyahoga No. 107472, 2019-Ohio-638, ¶ 68, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 1997- Ohio 260, 674 N.E.2d 1159 (1997).

**{¶ 30}** As to the second prong of the analysis, once the juvenile court determines that one of the factors listed in R.C. 2151.414(B)(1) applies, then the

court must determine, by clear and convincing evidence, whether permanent custody is in the best interest of the children. *In re E.C.*, 8th Dist. Cuyahoga No. 103968, 2016-Ohio-4870, ¶ 29. When determining the child's best interest pursuant to R.C. 2151.414(D)(1), courts analyze the following factors: (1) the interaction and interrelationship of the child with others, (2) the wishes of the child, (3) the custodial history of the child, (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody, and (5) whether any of the factors in divisions R.C. 2151.414(E)(7) to (11) apply.

{¶ 31} Shipman testified that the children have bonded with their foster parents and are very happy in their home, and that they have been in care for most of their lives. She also testified that Mother knows the children are in a good home and that if Mother cannot get custody of the children, she would want their current foster family to adopt them.

{¶ 32} The trial court stated, in the journal entries:

Upon considering the interaction and interrelationship of the child[ren] with the child[ren's] parents, siblings, relatives, and foster parents; the wishes of the child[ren]; the custodial history of the child[ren], including whether the child[ren] has been in temporary custody of a public children services agency or private child placing agency under one (1) or more separate orders of disposition for twelve (12) or more months of a consecutive twenty-two (22) month period' the child[ren]'s need for legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and notwithstanding the report of the Guardian ad litem, the Court finds by clear and convincing evidence that a grant of permanent custody is in the best interests of the child[ren] and the

child[ren] cannot be placed with mother within a reasonable time or should not be placed with mother.

Journal entry Nos. 0914624631 and 0914624634 (Apr. 9, 2021).

**{¶ 33}** The trial court further found that reasonable efforts were made to prevent the removal of the children from Mother, and that "relevant services" were provided to Mother. However, Mother was not successful in completing or benefitting from the services and has continued to relapse throughout the duration of this case.

**{¶ 34}** Thus, after a thorough review of the record, we find that there is clear and convincing evidence supporting the determination to award permanent custody to CCDCFS, and that the trial court did not abuse its discretion by finding that the award is in the best interest of the children.

**{¶ 35}** Mother's sole assignment of error is overruled.

**{¶ 36}** The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

MARY J. BOYLE, A.J., and
SEAN C. GALLAGHER, J., CONCUR